INDUSTRIAL ADDITION ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103753. Promulgated December 30, 1942.

*H. A. Mihills, C. P. A.,* for the petitioner.
*Frank M. Thompson, Jr., Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge:* Petitioner claims to be exempt from tax under subsection (7) or (8) of section 101 of the Revenue Act of 1936 and corresponding provisions of the 1932 and 1934 Acts. The two subsections, which were reenacted without change in each of the three acts, are set forth below.[1] Petitioner asserts that its position is generally supported by either or both of these subsections, though it does not state with clarity which provision governs the particular facts presented here.

Two factors must appear as a prerequisite to exemption under either paragraph. One of these is common to both, namely, that the corporation must not have been organized for profit. To fall within subdivision (7) it must further appear that no part of the net earnings inures to the benefit of any private shareholder or individual; and subdivision (8) requires that the civic organization be operated exclusively for the promotion of social welfare.

We think it clear in the instant case that in its inception petitioner was not organized for profit, but rather was a civic enterprise designed to meet a community problem. Its purpose was to induce industry to locate in Dyersburg and there was no intent to conduct a business for the benefit of private individuals. To secure the necessary funds to accomplish that purpose, instead of merely asking for donations, it acquired a large tract of land and proceeded to sell undivided interests therein.

Incidental to the main plan there was a need to furnish sufficient dwellings to house the employees of the milling company. For this purpose certain of the individuals who had purchased undivided interests in the land pooled their interests and, by agreement among themselves and with petitioner, authorized petitioner to construct houses on lots represented by such interests, which were leased to the milling company and by it to the employees. In return, these individuals received certificates from petitioner entitling them to 6 per-

---

[1] SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.

The following organizations shall be exempt from taxation under this title—

\* \* \* \* \* \* \*

(7) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual;

(8) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes;

\* \* \* \* \* \* \*

cent on their investment. The certificates, if called, were redeemable at face value, and the lease granted the lessee the option to purchase the houses and lots by discharging the mortgage incurred to erect the houses and by paying the certificate holders the face amount of their certificates plus accrued interest. The lot-pool agreement specified that petitioners could sell the houses and lots, in which event the proceeds of sale in excess of the amount of the mortgage were to be divided among the certificate holders.

When petitioner thus subdivided some of its property and erected houses thereon with a view to renting them, it projected itself into a business of a kind that is ordinarily carried on privately for profit. It entered a competitive field. In these circumstances, to enjoy the advantage of tax exemption it must demonstrate that it falls strictly within one of the favored classifications. *Produce Exchange Stock Clearing Association* v. *Helvering*, 71 Fed. (2d) 142, 143; *Medical Diagnostic Association*, 42 B. T. A. 610, 617; *Fort Worth Grain & Cotton Exchange*, 27 B. T. A. 983; *Producers' Creamery Co.* v. *United States*, 55 Fed. (2d) 104.

We think it has failed to do so. The premises were rented at a sum sufficient to discharge petitioner's indebtedness and to return to the certificate holders 6 percent per annum on their investment. The 6 percent payments concededly represented a part of petitioner's earnings, and obviously inured to the benefit of private shareholders or individuals. Exemption under subsection (7) must consequently be denied.

Nor do we think it can be said that a company is operated *exclusively* for the promotion of social welfare where, however laudable its aims, a portion of its profits is paid to investors and there is, in addition, a possibility of a distribution to them of the net proceeds from the sale of its assets. Petitioner appears to rest its argument upon the proposition that exemption is allowable if the certificate holders were entitled only to a return of their investment plus interest in the meantime. It states that the holders "were willing to risk their own money with the possible chance of receiving their principal back with interest, *and no more.*" But we think the exemption would have to be denied even if the certificate holders could receive only a return of their investment plus interest. We denied exemption in *Amalgamated Housing Corporation*, 37 B. T. A. 817; aff'd. per curiam, 108 Fed. (2d) 1010, to limited dividend housing corporations the stockholders of which could not sell their stock for more than par plus accrued dividends and, upon dissolution, could receive no more than par plus accrued dividends, the balance to be paid to the state. Dividends in that case could not exceed 6 percent per annum. In declining to follow the opinion of the Seventh Circuit in *Garden Homes Co.* v.

*Commissioner*, 64 Fed. (2d) 593, upon which the present petitioner relies, we said:

* * * The provision for 6 per cent on the stock was deliberately designed to encourage the use of private capital * * *. * * * The corporations during the taxable years * * * were operated in such a way as to permit the payment of dividends on the preferred shares. * * * Each was organized in part for profit, even though the profit was limited, and neither was operated exclusively for the promotion of social welfare.

We see no merit in petitioner's contention that the certificate holders were merely creditors who had no right to vote or take part in the management of its affairs. Whether they were creditors or investors depends upon whether the real transaction, as intended by the parties, was an investment in the corporation or a loan to it. *Proctor Shop, Inc.*, 30 B. T. A. 721, 725; affd., 82 Fed. (2d) 792. There can be no question but that the certificates involved here did not evidence debts. Neither they nor the lot-pool agreement contained any promise on petitioner's part to repay the principal amount of $300. Even the right to receive the so-called interest was to cease upon termination of the lease, although the certificates might then remain outstanding. "There is, thus, an entire absence here of the most significant, if not the essential feature of a debtor and creditor as opposed to a stockholder relationship, the existence of a fixed maturity for the principal sum with the right to force payment of the sum as a debt in the event of default." *United States* v. *South Georgia Railway Co.*, 107 Fed. (2d) 3, 5; *Parisian, Inc.* v. *Commissioner*, 131 Fed. (2d) 394. We think it clear that petitioner's subscribers, whether they pooled their interests or not, constituted its members; but even if the certificates carried no voting rights, that fact would not be decisive. "Preferred stock is frequently issued without such rights." *Ticker Publishing Co.*, 46 B. T. A. 399, 411. Some of the subscribers testified that they regarded their payments as donations, and petitioner states on brief that while interest has been paid, "little if anything of the $300 subscription [was] ever expected to be returned." Thus, both the form and the intent negative the creation of a debt.

Petitioner places much reliance upon the fact that it was organized under provisions of the Tennessee Code relating to nonprofit corporations and that its charter prohibited the distribution of dividends. It is well settled, however, that these factors are not determinative. We said in *Apartment Operators Association*, 46 B. T. A. 229, 233, 234:

* * * The fact that the corporation was organized under the state laws relating to nonprofit corporations and the officers had no intention to conduct its operations at a profit is less important than its actual operations. * * *

We conclude that respondent correctly determined that petitioner is not entitled to the exemption it seeks.

On the second issue, however, we are satisfied that during the years 1933 to 1936, inclusive, petitioner was not carrying on or doing business and therefore is not subject to the excess profits tax. The record establishes that petitioner's primary aim had been accomplished by the end of 1929. Industry had been located in Dyersburg; petitioner had rented the houses and lots for a period of 13 and possibly 18 years; the lessee had assumed the burdens of management and repair of the premises, including the payment of taxes and insurance; and the rental did not even pass through petitioner's hands, but was paid directly by the lessee to petitioner's creditor and certificate holders. No meetings of any kind were held, no records were kept, no compensation for services was paid, and, so far as appears, no corporate business of any kind was transacted. On this issue petitioner is sustained. *McCoach* v. *Minehill & Schuylkill Haven Railroad Co.*, 228 U. S. 295; *Kingkade Hotel Co.* v. *Jones*, 30 Fed. Supp. 508; dismissed on stipulation, 108 Fed. (2d) 1015; *Sears* v. *Hassett*, 111 Fed. (2d) 961; *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187; *United States* v. *Emery, Bird, Thayer Realty Co.*, 237 U. S. 28.

The remaining issue is whether the 6 percent payments to the holders of certificates may be deducted as interest paid. We have already stated our conclusion that the certificates were not evidences of indebtedness. The payments, therefore, may not be deducted as interest paid upon indebtedness. *United States* v. *South Georgia Railway Co., supra.*

Since petitioner failed to file returns, and there is no showing of reasonable cause for such failure, it is liable for the penalty imposed by section 291 of the applicable revenue acts. See *Furniture Finance Corporation*, 46 B. T. A. 240.

*Decision will be entered under Rule 50.*