Bonds, Incorporated v. Commissioner.
Bonds, Inc. v. Commissioner
Docket No. 5074.
United States Tax Court
1944 Tax Ct. Memo LEXIS 49; 3 T.C.M. (CCH) 1197; T.C.M. (RIA) 44361; November 11, 1944
*49 John W. Rader, C.P.A., 620 Commerce Bldg., Kansas City, Mo., for the petitioner. Cecil H. Haas, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income and declared value excess profits taxes for the taxable year ended December 31, 1942, in the amounts of $3,141.70 and $118.58, respectively. The questions presented are whether the petitioner is entitled to deduct as interest, payments made to the holders of its debentures and whether it is entitled to deduct additions to its sinking fund. All facts were stipulated. We adopt such stipulation by reference and find the facts therein set forth. Such portions as found necessary to discussion of the issues presented may be summarized as follows: [The Facts] Petitioner is a corporation organized under the laws of the State of Kansas, and engaged in the investment business. Its charter states that the capital stock is 5,000 shares without nominal or par value, and that the then present value thereof was $5,000. On March 25, 1938, the board of directors of the petitioner adopted a resolution authorizing the issuance of and setting out the provisions of "5% Speculative Participating Cumulative *50 Debentures" (hereinafter sometimes referred to as "securities"). Such resolutions provided in substance for the issuance and sale of $250,000 face value, Speculative Five Per Cent Participating Cumulative debentures; that not less than 90 per cent of the proceeds received from the sale thereof was to be invested in bonds which might be of a speculative or semi-speculative nature; that 10 per cent of the proceeds received should be placed in an operating account from which all expenses of operation of the corporation would be paid; that the net annual earnings of the petitioner would be distributed on December 1, and December 1 of each year, pro rata to owners of outstanding debentures, as interest computed at 5 per cent per annum on the face value of the debentures; that interest would be cumulative; that net annual earnings in excess of such interest so distributed would be applied first to create a sinking fund equal to 1 per cent of the face amount of all outstanding debentures, to be used only for the redemption loan and call provisions of debentures; that following the annual audit as of January 1 of each year, 50 per cent of any additional net earnings would be distributed pro *51 rata to owners of outstanding debentures as additional interest; that the petitioner would redeem debentures at any interest distribution period more than 18 months after the date of their issue, upon 60 days notice; that the owner upon such redemption and surrender of such debenture would be paid the full book value thereof, plus accrued interest to date of redemption at the rate of 5 per cent, less a discount of 6 per cent of the total of such book value and interest; that the debentures thus redeemed might be cancelled or resold in the discretion of the board of directors; that the petitioner reserved the right to call debentures at any time after one year from date of issue, paying accrued interest of 5 per cent and either book value or $110 for each $100 face value, whichever was larger; that the debenture holders might after 18 months from the date of issue, upon 60 days notice, borrow 70 per cent of the book value of such debentures for 6 months by pledging same as security; that book value of debentures should be determined by taking all net assets of the corporation not specifically set aside out of the earnings for the benefit of common stockholders, and dividing the same *52 by the face value of all outstanding debentures; that the owners of debentures should have a first and prior lien on all bonds purchased with the proceeds of the sale of debentures; that bonds purchased with the proceeds of the sale of debentures should be kept in the custody of banks or trust companies to be designated by the officers and directors of the petitioner; and that debentures should be sold for their full face value. Petitioner has uniformly, upon the sale of its debentures, placed 90 per cent of the money in a general investment account and 10 per cent in an operating account. Bonds have been purchased with the funds in the investment account and deposited with a bank in Kansas City, subject to withdrawal in case of sale thereof by the petitioner. The proceeds from the sale of a bond are placed in petitioner's general investment account and the gain or loss from such sale is reflected in petitioner's gross earnings, as is interest collected from such bonds. The sinking fund provided for the redemption of loan and call provisions of the securities sold by the petitioner contained a balance of $6,047 on December 31, 1941, and $8,086 on December 31, 1942. On October 21, *53 1941, all holders of petitioner's debentures signed and delivered a letter providing in substance that they agreed to interpret the contract set forth in the indentures as providing that the annual gross income received from all sources by the petitioner should be used, first, to provide for payment of taxes; second, to pay necessary operating expenses; third, to pay "the 5% per annum interest to debenture-holders;" fourth, that an amount equal to 1 per cent of the face value of all debentures outstanding as of each January 1st should annually be placed in a sinking fund, to be used only for the redemption, loan or call provisions of debentures as provided therein; and, fifth, that one-half of any additional net earnings should be distributed pro rata to outstanding debentures as additional interest immediately following the completion of the annual audit as of January 1st of each year. On December 31, 1942, the book value of the outstanding securities of petitioner was $81.10 for each $100 face amount thereof. In its income tax returns, from its organization in 1937 up to 1942, the payments made by petitioner to its debenture holders were treated as and considered to be dividends, *54 and no deduction was taken therefor. On capital stock tax returns filed by the petitioner for capital stock tax years ending on June 30, in 1939, 1940 and 1941, the debentures were classified as preferred stock, and on excess profits tax returns filed by the petitioner for 1940 and 1941, the amounts received from sale of debentures were included in petitioner's invested capital, in the computation of its excess profits credit, in accordance with the invested capital method. The certificates of debentures issued by the petitioner were entitled "Speculative Five Percent Participating Cumulative Debenture." Each contained a promise to pay the face value thereof and interest at the times and in the manner thereinafter set forth, and in accordance with the provisions of the directors' resolutions of March 25, 1938, hereinabove referred to, except that the debenture certificates contained no provision that the owners of debentures should have a first and prior lien on all bonds purchased through the proceeds and sale of debentures. The record does not disclose whether the statutes of Kansas, with reference to liens, were complied with, nor whether the bonds purchased with the 90 per cent *55 proceeds of the sale of any particular debenture were allocated in any way to that debenture. In its income tax return for the year 1942 the petitioner deducted $10,166.83 as "Deduction for 5% on Face of Debentures," and $2,039 as "1% Reserve for Sinking Fund." The respondent denied such deductions with the explanation that the payments to debenture holders are held to represent dividend payments and that the increase in the sinking fund does not constitute an allowable deduction. He determined that 10 per cent of the payments received on the debentures during the year did not constitute taxable income. Under the above facts, we are to decide, first, whether payments denominated by the petitioner as "interests" to the holder of its debentures constitute interest deductible within the meaning of section 23 (b) of the Internal Revenue Code, or whether they are rather of the nature of a "dividend" or distribution made to shareholders out of earnings or profits, within the meaning of section 115 (a) of the Internal Revenue Code. The nomenclature used by the petitioner in its records, resolutions and certificates, though it may properly be considered, is not conclusive. Proctor Shop, Inc., 30 B.T.A. 721; *56 affd., 82 Fed. (2d) 792. We must, from all of the circumstances, decide whether the transaction was in fact an investment in the corporation or a loan to it. We have examined carefully the stipulated facts and have considered the authorities cited by the respective parties and upon consideration thereof it is our conclusion that there is here presented a case of an investment in the corporation in the nature of stock, and not such a loan to it as would justify the deduction of amounts paid thereon as interest, under the statute. Without reciting all of the considerations which had led us to this conclusion, we point out that the debenture holder did not have the right to receive payment of the principal amount invested by him at a definite maturity date. On the contrary, 10 per cent of his investment was immediately deducted for operating expenses and his right, under the terms of the debenture certificate, was to receive, so far as principal is concerned, at any time (after 18 months) he gave notice of his desire for redemption, "the full book value of the debenture plus accrued interest to date of redemption at a rate of five per cent per annum computed *57 from last previous interest distribution period, plus any unpaid cumulations of interest, less a discount of six per cent of the total of such book value and interest." Book value, however, is defined by the resolution of March 25, 1938, which says that it shall be determined "by taking all net assets of the corporation not specifically set aside out of the earnings for the benefit of common stockholders, and dividing the same by the face value of all outstanding debentures." This can mean nothing less than that there shall be deducted from gross assets of the corporation its liabilities and that from the net remaining (if not set aside for benefit of common stockholders) the debenture holder is to receive payment. Such an arrangement precludes any idea that the debenture holder has a right to receive a certain sum at a certain time; yet, we find Commissioner v. O.P.P. Holding Corp., 76 Fed. (2d) 11, saying on this subject and with reference to the position of a debenture holder: "The fact that ultimately he must be paid a definite sum at a fixed time marks his relationship to the corporation as that of creditor rather than shareholder". United States v. South Georgia Ry. Co., 107 Fed. (2d) 3, *58 is to the effect that the most significant, if not the essential, feature of a debtor and creditor relationship is the existence of a fixed maturity date with the right to enforce payment in the event of default. To the same effect are Ticker Publishing Co., 46 B.T.A. 399; Commissioner v. Schmoll Fils Associated, Inc., 110 Fed. (2d) 611; Industrial Addition Association, 1 T.C. 378; Parisian, Inc., v. Commissioner, 131 Fed. (2d) 394. Even in those cases which hold that there is indebtedness, even though the interest is payable out of net income, we find reliance upon the fact that there is a definite maturity date for the payment of a definite amount. H. R. De Milt Co., 7 B.T.A. 7; John Kelley Co., 1 T.C. 457; Palmer, Stacy-Merrill, Inc., 39 B.T.A. 636; Commissioner v. Hood & Sons, Inc., 141 Fed. (2d) 467. It is clear from the facts stipulated in this case and summarized above that the debenture holders were not entitled to any fixed *59 sum at any fixed date. They could, it is true, demand redemption at any time after 18 months, but upon such redemption they are not entitled to any fixed sum, the amount to be received being dependent upon the financial condition of the petitioner as reflected by its book value, which the parties stipulate to have been $81.10 for each $100 debenture certificate on December 31, 1942. So far as principal is concerned, therefore, the debenture holders are seen to be merely participating in the profits of the company, whatever they may be. Aside, therefore, from the question as to whether interest being payable only from corporate earnings or profits indicates a non-indebtedness nature in the indentures, we consider that there was no indebtedness involved in the transaction here at hand. Other reasons for the same conclusion are that there was no date at which the debenture holder could declare default and institute action; Green Bay & Western Railroad Co., 3 T.C. 372 (379); Proctor Shop, Inc., supra;Pacific Southwest Realty Co., 45 B.T.A. 426; that the debenture holders had a right to receive *60 distribution of additional amounts above the "interest" to the extent of 50 per cent of additional net earnings, after the payment of "interest" and the contribution to the sinking fund; that the amount required for redemption, if debentures were called by the petitioner, was indefinite, being (in addition to "interest") either book value or $110 for each $100 face value, whichever was larger; also, that in the determination of the "book value" payable to debenture holders there was considered only net assets "not specifically set aside out of the earnings for the benefit of common stockholders," leaving the debenture holder junior to common stockholders in that respect. The intention of the parties is a criterion to which resort should be had. First Mortgage Corp. of Phila. v. Commissioner, 135 Fed. (2d) 121; and the petitioner here for several years and up to the taxable year here involved showed by its reports that it considered the payments made to debenture holders to be dividends, and made no claim for the deduction of interest, which is now being pressed. The intention of the petitioner to issue something in the nature of stock rather than indebtedness *61 is apparent, though perhaps in a lesser degree, from the fact that the directors' resolutions provide that debentures which had been redeemed "may be cancelled or resold in the discretion of the board of directors." It is clearly not common practice for a debtor to resell evidence of indebtedness which it has paid. Petitioner argues that the debenture holders had a lien upon the bonds purchased with the proceeds of the amounts paid by them for certificates; but in fact, though the corporate resolutions of March 25, 1938, provide for such a lien, the indenture certificate makes no such provision and it is not shown that there has been compliance with the laws of Kansas, which are requisite to the establishment of such a lien. From all of the record before us, we think it apparent that the holders of debenture certificates were not entitled, at least so far as the principal amount paid in by them is concerned, to more than a distribution of a portion of the petitioner's earnings and that such was the intent of the petitioner. We conclude and hold that no indebtedness was involved and that the Commissioner properly disallowed the $10,166.83 deducted as interest. The next question for *62 our consideration is whether the petitioner may deduct the amount of $2,039 which during the taxable year, as 1 per cent of all outstanding debentures, it placed in a sinking fund to be kept in cash and used only for the redemption of the debentures or for compliance with its obligation to make loans to the holders of debenture certificates. The petitioner urges that such addition to the sinking fund is a deductible expense of doing business, under section 23 (a) (1) (A) of the Internal Revenue Code. Clearly it is not. It represents merely an accumulation of cash for the purpose of redeeming what we have above found to be in the nature of stock, or to make loans thereon. Plainly, amounts accumulated for such a purpose do not partake of the nature either of a carrying charge or any ordinary and necessary business expense. Though the petitioner elects to treat the sinking fund increase as a deduction of expense, it is suggested that it should be excluded from gross income, and Paducah & Illinois Railroad Co., 2 B.T.A. 1001, is cited. The case is not in point, for it involved contributions to the capital of a railroad corporation by others interested therein. *63 Nor do cases involving perpetual maintenance, such as Parkview Memorial Association, 34 B.T.A. 406, lend assistance here, since we are here considering not a trust of a portion of a contract price, but net earnings accumulated for the purpose of discharging obligations in the nature of stock. The action of the Commissioner in disallowing the deduction of $2,039 is approved. Decision will be entered for the respondent.