**CAROLINAS FARM & POWER EQUIP-MENT DEALERS ASSOCIATION, INC., Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 82–1230.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1982.

Decided Jan. 24, 1983.

David I. Pincus, Tax Div., Dept. of Justice, Washington, D.C. (Samuel T. Currin, U.S. Atty., Raleigh, N.C., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, David English Carmack, Tax Div., Dept. of Justice, Washington, D.C., on brief), for appellant.

Curtis A. Twiddy, Raleigh, N.C. (Thomas L. Norris, Jr., Maria M. Lynch, Poyner, Geraghty, Hartsfield & Townsend, Raleigh, N.C., on brief), for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

The issue presented here is whether a tax-exempt trade association receives unrelated business taxable income when it assists its members in procuring economical group insurance and receives a percentage rebate of the premiums paid by them from the insurance provider. The district court

held that the rebates do not constitute unrelated business taxable income. We reverse.

### I.

The facts are established by stipulation of the parties:

Carolinas Farm & Power Equipment Dealers Association, Inc. (Association) is a trade association exempt from federal income tax under Section 501(a) and (c)(6) of the Internal Revenue Code of 1954. Its purpose is to promote the general welfare of independent retail distributors of farm and power equipment in North Carolina and South Carolina by monitoring state and federal legislation, conducting workshops, publishing a newsletter, and offering its members an opportunity to obtain group insurance. During the years 1973–1977, it had approximately 421 members, including corporations, partnerships, and sole proprietorships involved in that trade.

In 1955 the Association created an insurance trust fund to operate and fund a group insurance program for its members. The present trustees are members of the Association's Board of Directors. The trust acquired a master group insurance policy issued by the Federated Mutual Implement and Hardware Insurance Company of Owatonna Minnesota (Federated), providing life insurance, accident and health insurance, and hospital and surgical insurance coverage. Enrollment in the program is limited to members of the Association, of which approximately 41 percent chose to participate during the years in question.

The Association distributes information pamphlets prepared by Federated to its members or prospective members, answers questions its members have about the program, forwards to Federated changes in coverage requested by its members, and transmits monthly premium notices to participating members. The members pay their premiums to the trust, which remits the premiums, in full, to Federated.

The Association has four employees, all of whom handle the operation of the group insurance program to some extent. One devotes full time, one two-thirds time, one one-third time, and one one-fourth time to such activities. The trust pays the Association an administrative fee for these services. During the years at issue here, 1973 through 1977, Federated rebated seven percent of gross accident and health insurance premiums to the Association or the trust as an administrative allowance. From 1973 to 1976 it paid approximately two-thirds of this amount to the Association and one-third to the trust. In 1977 it paid the entire rebate to the trust. The trust used its receipts to pay operating expenses and maintain a reserve fund. The Association used its receipts to pay operating and other general expenses. The rebates were quite large in relation to the Association's other income from membership fees and assessments. For example, in 1973 it received $41,604.34 as an administrative allowance, on which it earned a tax profit of $15,542.75 and an accounting profit of $27,592.16,[1] as compared to only $24,425.74 it received from membership fees and assessments. During the years 1973–77, the Association's total gross receipts was $569,005 and its total insurance rebates was $246,572.

In addition to the administrative allowance or rebate, the Association also receives an experience refund from Federated when the claims of its members are less than the premiums paid for a year. The Association distributes these experience refunds to its members in proportionate shares. The Internal Revenue Service makes no claim that the rebated experience refunds constitute unrelated business taxable income.

After the Internal Revenue Service determined that the administrative allowance was taxable income, the Association paid the contested amounts and filed claims for refund. When these were not honored, the Association filed suit for refund of the tax paid, asserting: first, that the rebates are

---

1. Both amounts are derived by deducting the Association's cost of providing the various services. The difference between the two figures exists because certain deductions are allowed for tax purposes which are irrelevant for accounting purposes.

not unrelated business taxable income; second, even if they are, that any funds received by it from Federated are held in trust for its members and therefore are not income to it. A magistrate to whom the case was originally referred recommended that both contentions be rejected but the district court held that the rebates are not unrelated business taxable income, and so did not reach the second issue.[2]

## II.

Section 511 of the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 511 imposes a tax on "unrelated business taxable income," and §§ 512 and 513, 26 U.S.C. §§ 512 and 513, define "unrelated trade or business income" as gross income, less deductions, if the income: (1) arises from a trade or business, (2) which is regularly carried on, and (3) which is not substantially related to the organization's exempt purpose. 26 C.F.R. § 1.513–1. It is undisputed that the Association's insurance activities are regularly carried on, so the only issues here are whether those activities constitute a trade or business which is not substantially related to the purpose for which the Association's exemption was granted.

## A.

Section 513(c) states that "[f]or purposes of this section, the term 'trade or business' includes any activity which is carried on for the production of income from the sale of goods or the performance of services." Thus, one might easily conclude that the proper inquiry is whether an organization conducts an activity to earn a profit. If so, the activity is a trade or business. *Accord, Louisiana Credit Union League v. United States*, 693 F.2d 525 (5 Cir.1982), *affirming* 501 F.Supp. 934 (E.D.La.1980); *Clarence LaBelle Post No. 217 v. United States*, 580 F.2d 270 (8 Cir.1978); *Professional Insurance Agents v. Comm'n*, 78 T.C. 246 (1982).

Kaplan, *Intercollegiate Athletics and the Unrelated Business Income Tax*, 80 Colum. L.Rev. 1430, 1438 (1980). Certainly there can be no dispute given the consistently profitable result of the operations, the proportion of insurance income to total income and the use of the income for its own purposes that the Association carried on its insurance activities to earn a profit.

However, several courts, reasoning that the intent of Congress in enacting the unrelated business tax provisions and subsequent amendments was to prevent charitable organizations operating essentially commercial operations from having a competitive advantage over taxpaying enterprises, have adopted more restrictive tests. One has held that the proper inquiry is whether the activity might be unfairly competitive with taxpaying enterprises. *Hope School v. United States*, 612 F.2d 298 (7 Cir.1980). *Accord, Clarence LaBelle Post No. 217, VFW v. United States*, 580 F.2d 270, 275 (8 Cir.1978) (Schatz, J., dissenting). Another has stated the test to be whether the activity is one traditionally engaged in by a charity or whether it is an "abusive" step into traditional commercial areas. *Mass. Medical Soc. v. United States*, 514 F.2d 153 (1 Cir.1975). While still another concludes that while unfair competition need not be established, the proper inquiry is whether the activity is conducted in a competitive and commercial manner. That is, whether a good or service is offered in a competitive manner for a competitive price. *Disabled American Veterans v. United States*, 650 F.2d 1178 (Ct.Cl.1980).

█ The legislative history of the unrelated business income tax provisions and their amendments is thoroughly explored in the majority and dissenting opinions in *Clarence LaBelle Post, supra*. That history strongly suggests that Congress's primary intent in enacting these provisions was to

2. In this appeal the Association has abandoned its contention that the funds received by it from Federated are nontaxable because they are trust funds held for the benefit of its members. It has failed to assert this contention as a ground of affirmance of the judgment of the district court even though the government's brief called attention to the fact that the argument was asserted in the district court and stated its willingness to litigate the issue if it was renewed by the Association. We therefore will not consider it.

avoid endowing tax-exempt organizations with an unfair competitive advantage. Nonetheless, we think that the plain language of Section 513(c) should control and that an activity is a "trade or business" if an exempt organization conducts it for the production of income from the performance of services.[3] While there is no need to look to legislative history where, as here, the language of a statute is quite clear, *see, e.g., Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976), defining an activity as a trade or business on the basis of the taxpayer's motive for conducting it arguably effectuates Congress's intent since an activity conducted with a profit motive and not substantially related to a charitable end "presents sufficient likelihood of unfair competition to be within the policy of the tax." 26 C.F.R. 1.513–1(b).[4]

■ In the light of inaction on the part of Congress over a period of thirty-two years to create a requirement of actual competition with taxable entities as a prerequisite for taxation of unrelated business income, *see Louisiana Credit Union League v. United States,* 501 F.Supp. 934, 939 (E.D. La.1980), it is difficult to conclude that the activities must compete with for-profit enterprises as a prerequisite to taxation.[5] On the basis of the record before us we must infer the Association undertook this activity with a profit motive. The district court held it did not, reasoning that the Association's explicit purpose was to provide low-cost group insurance to benefit the industry. By contrast, the Fifth Circuit has found a trade association had a profit motive in endorsing and aiding its members to acquire insurance, debt collection and data processing services when it consistently earned significant profits from rebates or fees paid by the providers of those services. *Louisiana Credit Union League, supra.* Similarly, the Tax Court in *Professional Insurance Agents v. Comm'n, supra,* on facts somewhat similar to these here, found a profit motive in large part because the contested activity was highly profitable.[6] We follow the Fifth Circuit and the Tax Court, because we think that there is no better objective measure of an organization's motive for conducting an activity than the ends it achieves. *Accord,* Kaplan, *supra,* 80 Colum.L.Rev. at 1438–40. This factor weighs heavily against the Association since it consistently received far more in rebates than it expended in providing insurance services.

Second, other strong evidence of profit motive can be found by implication when

---

**3.** Section 513(c) was added to the Code by the Tax Reform Act of 1969, Pub.L. No. 91–172, § 121(c), 83 Stat. 487 (1969), and while its primary purpose was merely to render taxable the advertising revenues earned by professional journals, its language was not so restricted. *See* H.Rep. No. 91–413, reprinted in 1969 U.S. Code Cong. & Admin.News, pp. 1645, 1695–6.

**4.** When an activity presents sufficient possibility of profit to induce a tax-exempt organization to undertake it for the purpose of earning a profit, it seems logical to assume that engaging in the same activity would be attractive to a nontax-exempt organization, so that there exists a substantial likelihood of unfair competition. *Cf. Clarence LaBelle Post,* 580 F.2d at 275 (Lay, J., concurring) (Treasury's determination that profit motive presents danger of unfair competition warrants judicial deference).

**5.** We intimate no view as to whether an activity conducted to earn income, but in a noncommercial manner, can be a trade or business. *Cf. Louisiana Credit Union League v. United States,* 693 F.2d 525, 541 n. 32 (5 Cir.1982);

*Disabled American Veterans v. United States, supra.* An example of such an activity is mailing small items to potential donors and requesting a contribution in return. *See Hope School v. United States, supra.* We need not resolve this issue here, since the Association's insurance activities are conducted in a sufficiently commercial manner to come within the definition of a trade or business even if such a limitation is assumed, for the Association affirmatively advertised the program to its members, and it was guaranteed remuneration, albeit by a third party, the insurance provider, if they elected to participate.

**6.** There was additional evidence of profit motive in *Professional Insurance Agents* not present here. First, an executive of the trade association testified that it would have found a new insurance provider but for the rebate. Second, the Association's insurance activities had earlier been conducted in a taxpaying subsidiary.

the taxpayer does not meet the third part of the test for unrelated business income: whether the activity is substantially related to an organization's charitable purpose. If an activity which is not substantially related to a charitable purpose is conducted in a competitive profit-seeking manner and regularly earns significant profits, a heavy burden must be placed on the organization to prove profit is not its motive. Certainly where, as here, an organization could easily rebate any profits to its members and thus better fulfill its nonprofit, ostensible charitable purpose by providing them with even lower cost group insurance, that burden must be held unmet.

### B.

The regulations state that for an activity to be substantially related to an organization's exempt purposes it must bear a substantial causal relationship or contribute importantly to the achievement of those purposes other than through the production of income. 26 C.F.R. § 1.513–1(d)(2).[7] Indeed, the statute is specific that an activity is not substantially related merely because it obtains funds which are then applied to achieve a charitable purpose. 26 U.S.C. § 513(a).

The Association is tax exempt under § 501(c)(6) of the Code as a "business league," defined in 26 C.F.R. 1.501(c)(6)–1 as "an association of persons having a common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit." This regulation further admonishes that the activities of such an association "should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons."

We think that the Association's insurance activities constituted the performance of a service for its individual members and not activities substantially related to its corporate objectives. As Justice Reed (Ret.) noted in *Evanston-North Shore Board of Realtors v. United States*, 320 F.2d 375, 378, 162 Ct.Cl. 682, (7 Cir.1963), it is often difficult to determine whether a trade association's activities primarily benefit individual members or the trade generally since the interests of both are inevitably intertwined. In this case, for example, the provision of low-cost life insurance most directly benefits those members of the Association who choose to participate in the program, but it can also be said to benefit the entire industry—at least that operating in North and South Carolina—since it makes available to all the option to join such a program.

Several factors are present here, however, which are strong evidence that the program operates primarily to benefit individual members and not the industry as a whole. First, and most important, is the fact that the fees charged members for participation in the insurance program are in direct proportion to the benefits received. *See, e.g., Contracting Plumbers Cooperative Restoration Corp. v. United States*, 488 F.2d 684, 687 (2 Cir.), *cert. denied*, 419 U.S. 827, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974); *Evanston-North Shore Board of Realtors*, 320 F.2d at 378–379. Second, participation in the insurance program is limited to members of the Association, so unlike such activities as lobbying services, it is of no benefit to those in the industry who are not members. *See, e.g., Contracting Plumbers Coop.*, 488 F.2d at 687; *Evanston-North Shore Board of Realtors*, 320 F.2d at 379. Finally, the service provided by the Association is one commonly provided by for-profit entities. This is significant because the regulation re-

---

**7.** The full text of the pertinent portion of the regulation follows:

(2) Type of relationship required. Trade or business is "related" to exempt purposes in the relevant sense, only where the conduct of the business activities has causal relationship to the achievement of exempt purposes (other than through the production of income); and it is "substantially related," for purposes of section 513, only if the causal relationship

is a substantial one. Thus, for the conduct of trade or business from which a particular amount of gross income is derived to be substantially related to purposes for which exemption is granted, the production or distribution of the goods or the performance of the services from which the gross income is derived must contribute importantly to the accomplishment of those purposes. . . .

quires a substantial causal relationship between the activity and accomplishment of an exempt purpose. Where a service is available in the marketplace, a trade association need not provide it to accomplish an exempt purpose. *Cf. Associated Master Barbers & Beauticians of America, Inc. v. Commissioner,* 69 T.C. 53, 64 (1977) (trade organization that primarily provides insurance and supplies to members is not exempt because such goods are traditionally supplied by for-profit entities). For these reasons, we must conclude that the Association's insurance service primarily advances the interests of participating members, and so it is not related to its charitable purpose.[8]

Because we conclude that Association's income satisfied each factor of the tripartite test to render it taxable as unrelated business taxable income, we reverse the judgment of the district court.

REVERSED.

---

**8.** The Fifth Circuit has held that in order to be substantially related to its exempt function, the activities must be "unique" to the organization's tax-exempt purpose and they must redound to the benefit of its members as members. *Louisiana Credit Union League, supra.* By this test, we think that the Association's insurance service is not substantially related to its exempt function. The service is not unique; it is readily available in the marketplace. The service does not benefit members as members. It benefits only members who employ the service and it benefits them in their individual capacities. As a group, members gain no benefit from the fact that some avail themselves of the insurance service.