KENTUCKY MUNICIPAL LEAGUE, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 22258–80.     Filed August 24, 1983.

*Thomas E. Bulleit* and *Wayne F. Collier*, for the petitioner.
*Scott R. Cox*, for the respondent.

OPINION

SIMPSON, *Judge*: The Commissioner determined a deficiency of $4,373 in the petitioner's Federal income tax for the fiscal year ended June 30, 1977. After a concession by the petitioner, the sole issue for decision is whether funds received by the petitioner from the collection of unpaid taxes for its members constitute unrelated business taxable income within the meaning of section 512(a)(1) of the Internal Revenue Code of 1954.[1]

All of the facts have been stipulated, and those facts are so found.

The petitioner, Kentucky Municipal League (the league), is a nonprofit organization, with its office in Lexington, Ky., at the time it filed its petition in this case. The league filed its Return of Organization Exempt from Income Tax (Form 990) for its fiscal year ending June 30, 1977, with the Internal Revenue Service, Cincinnati, Ohio. We shall refer to a fiscal year by the calendar year in which it ends.

On May 23, 1944, the league was determined by the Commissioner to be exempt from Federal income tax as an organization described in section 101(8) of the Internal Revenue Code of 1939, the predecessor of section 501(c)(4) of the 1954 Code. The league is a nonpartisan organization, organized, owned, and operated by the cities of Kentucky to promote practical, effective, and economical local government.

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue, unless otherwise indicated.

According to its constitution, the object of the league is to act as a mutual agency for the cooperation of Kentucky cities in the practical study of city affairs, to promote the application of the best methods in all branches of municipal service by holding at least one annual conference to discuss municipal administration problems, to gather and circulate information and experiences on city affairs, and to secure legislation beneficial to municipalities and to oppose injurious legislation. Any city in the State of Kentucky was eligible to become a member of the league. The league levied annual dues on its membership to finance its activities.

Approximately 150 municipalities in Kentucky were authorized to collect license taxes from insurance companies doing business within those municipalities. Since 1954, the league assisted 70 of such municipalities in the collection of such taxes when not paid. The league executed contracts with the municipalities desiring such assistance and, pursuant to such contracts, assumed all of the expenses necessary to collect the unpaid taxes in exchange for 50 percent of the amounts collected.

The league, itself, did not collect the unpaid taxes. During 1977, Glenn Lovern & Associates (GLA) assisted in the collection of such taxes and performed much of the actual collection work. Pursuant to the agreement between the league and GLA for that year, the work was to be performed under the supervision of the executive committee of the league and was subject to audit by the league. The league was to furnish, at its expense, the necessary stationery and forms required to efficiently handle the work. GLA was to furnish, at its expense, all traveling expenses deemed necessary by it, stenographers, legal advisers, other help which they may employ, and certain miscellaneous expenses. No claim for unpaid taxes was to be compromised without the agreement of the league. All unpaid taxes collected by GLA were to be deposited in a bank account maintained by the league. GLA was to receive 37½ percent of such funds in exchange for its services, and the league was to retain 12½ percent of such funds.

In connection with the collection of the unpaid taxes, the league's staff opened mail, deposited checks, answered telephone and written inquiries from insurance companies and

cities, and provided bookkeeping and auditing services. During 1977, the league received at least $219,325.73 from various insurance companies as uncollected taxes. Of such funds, it paid at least $112,125.48 to the municipalities and $80,957.91 to GLA, and it retained $29,799 as its share. In 1977, the league incurred expenses of $7,058 in connection with its collection activities.

On its return for 1977, the league reported gross receipts of $121,998, including its share of the unpaid taxes. Its reported dues received from members constituted 42 percent of such gross receipts, and its share of the unpaid taxes constituted 24 percent of such receipts. In his notice of deficiency, the Commissioner determined that the league's share of unpaid taxes constituted unrelated business taxable income.

The sole issue for decision is whether the income which the league derived from the collection activity constituted unrelated business taxable income.

Section 511(a) imposes a tax on the unrelated business taxable income of certain organizations otherwise exempt from taxation. Section 512(a)(1) provides that in the case of certain organizations (such as a civic league described in section 501(c)(4)), unrelated business taxable income means "the gross income derived by an organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions * * * which are directly connected with the carrying on of such trade or business." Section 513(c) provides that "the term 'trade or business' includes any activity which is carried on for the production of income from the sale of goods or the performance of services." Section 1.513–1(a), Income Tax Regs., provides that income is includable in the computation of unrelated business taxable income if three requirements are met: (1) It is income from a trade or business; (2) such trade or business is "regularly carried on" by the organization; and (3) the conduct of such trade or business is not substantially related (other than through production of funds) to the organization's performance of its exempt functions. If any of such conditions is not present, the activity is not an unrelated business. We have concluded that the league's collection activity was substantially related to the performance of its exempt functions; consequently, we need not discuss the arguments over whether such

activity constituted a trade or business regularly carried on by the league.

To decide whether a trade or business is substantially related "necessitates an examination of the relationship between the business activities which generate the particular income * * * and the accomplishment of the organization's exempt purposes." Sec. 1.513–1(d)(1), Income Tax Regs. Section 1.513–1(d)(2) declares:

Trade or business is "related" to exempt purposes, in the relevant sense, only where the conduct of the business activities has causal relationship to the achievement of exempt purposes (*other than through the production of income*); and it is "substantially related," for purposes of section 513, only if the causal relationship is a substantial one. Thus, for the conduct of trade or business from which a particular amount of gross income is derived to be substantially related to purposes for which exemption is granted, the production or distribution of the goods or the performance of the services from which the gross income is derived *must contribute importantly* to the accomplishment of those purposes. * * * [Emphasis added.]

The determination of whether the league's income-producing activities contribute importantly to the accomplishment of an exempt purpose is a factual question requiring "a case-by-case identification of the exempt purpose, an analysis of how the activity contributes to that purpose and an examination of the scale on which the activity is conducted." See, e.g., *Hi-Plains Hospital v. United States*, 670 F.2d 528, 531 (5th Cir. 1982); see also *Carolinas Farm & Power Equipment Dealers v. United States*, 699 F.2d 167, 171 (4th Cir. 1983).

The league is tax exempt under section 501(c)(4) as a civic league "operated exclusively for the promotion of social welfare." Section 1.501(c)(4)–1(a)(2), Income Tax Regs., provides that "An organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community. An organization embraced within this section is one which is operated primarily for the purpose of bringing about civic betterments and social improvements." See and compare *Monterey Public Parking Corp. v. United States*, 481 F.2d 175 (9th Cir. 1973), and *United States v. Pickwick Electric Membership Corp.*, 158 F.2d 272 (6th Cir. 1946), with *Industrial Addition Association v. Commissioner*, 149 F.2d 294 (6th Cir. 1945), affg. per curiam 1 T.C. 378 (1942).

It was stipulated that the league was "organized, owned, and operated by the cities of Kentucky to promote practical, effective, economical, local government." The cities of the State were authorized to impose and collect taxes from insurance companies doing business in them. If some of such taxes were not voluntarily paid, the city could take appropriate means to collect the unpaid taxes. To do so costs money. Some cities apparently considered that it was practical for them to employ their own staffs and collect the unpaid taxes. However, for other cities, it was more expensive to have the taxes collected by their own staffs; for those cities, it was more practical to enter into a contract with the league for it to collect the unpaid taxes. For such cities, the league clearly performed a service that promoted practical and effective government. The collection of the taxes is certainly an essential function of the city, and when the league performed that function for the city, it was carrying out the very purpose for its organization and operation.

The Commissioner argued that the collection services performed by the league were similar to the business carried on by a commercial collection agency and that, for such reason, the activity should not be considered as substantially related to its exempt purposes. In judging whether an activity accomplishes an exempt purpose, it is appropriate to consider whether the activity could be secured in the marketplace. See *Carolinas Farm & Power Equipment Dealers v. United States*, 699 F.2d at 171–172. Although there are commercial collection agencies, we are not convinced that they could perform for the cities of Kentucky the same service as that furnished by the league. The league coordinated collection activities of all the cities which chose to participate in its program. The league supervised the collection activities of GLA and audited its results. The league also had the authority to decide whether a compromise of any claim should be accepted. These are responsibilities that the cities were willing to delegate to the league, which was created by them and responsible to them, but the cities might not have been willing to transfer such responsibilities to a commercial collection agency. Although GLA, a commercial collection agency, did perform the day-to-day collection activities, it operated under the supervision of the league, and the cities may well have not been willing to

place the same trust in GLA as they placed in the league. Under these circumstances, it appears that the league was performing a service for the cities which was not available from a commercial agency.

In support of his position, the Commissioner relies on *Professional Insurance Agents v. Commissioner*, 78 T.C. 246 (1982), on appeal (6th Cir., Aug. 13, 1982), and *Associated Barbers & Beauticians v. Commissioner*, 69 T.C. 53, 64 (1977). Those cases involved business leagues, and the Court had to decide whether the activities furthered the improvement of business conditions generally. The Court held that the activities did not promote a common business interest but did further the separate business interests of individual members. However, we consider such cases not to be apposite. In the case of a business league, an activity is not·exempt if it merely assists a member in his separate business activities. Here, we are dealing with a civic league organized and operated to assist the cities of Kentucky. Those cities are exempt organizations; the activities which furthered their objectives are exempt activities; and the activities of a civic league that assists them in the accomplishment of such activities are also exempt. Thus, the fact that the collection of the unpaid taxes assisted the cities is no reason to conclude that the activity was· not exempt; on the contrary, such fact leads to the conclusion that the activity was exempt. Since the petitioner's collection activities were substantially related to the accomplishment of the organization's exempt purposes, we hold that the income from such activity did not constitute unrelated business taxable income.

*Decision will be entered under Rule 155.*