**STEAMSHIP TRADE ASSOCIATION OF BALTIMORE, INC., Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 84–1099.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1984.

Decided March 27, 1985.

Rehearing Denied May 6, 1985.

Neil S. Kurlander, Baltimore, Md. (A. Adgate Duer, George M. Radcliffe, Niles, Barton & Wilmer, Baltimore, Md., on brief), for appellant.

David I. Pincus, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Robert A. Bernstein, Washington, D.C., on brief), for appellee.

Before SPROUSE, CHAPMAN and SNEEDEN, Circuit Judges.

SPROUSE, Circuit Judge:

Steamship Trade Association of Baltimore, Inc. (STA), a tax-exempt business league, appeals from the decision of the Tax Court upholding the Internal Revenue Service's determination that it was liable for taxes on unrelated business income for tax years 1975, 1976, and 1977. *Steamship Trade Association v. Commissioner*, 81 T.C. 303 (1983). The income held to be taxable arose from STA's retention of a portion of the funds it received from its members on behalf of longshoremen employees to fund guaranteed annual wage and vacation pay accounts established pursuant to collective bargaining agreements. STA argues that (1) its administration of the guaranteed wage and vacation pay accounts was not a trade or business under I.R.C. § 513 (1982), (2) its administration of the two accounts was substantially related to its exempt purposes, and (3) the Tax Court erroneously failed to allocate a portion of the retained amounts as compensation for STA's exempt negotiation and dispute resolution activities.

For the reasons discussed below, we affirm.

## I.

STA is a trade association exempt from federal income taxation as a "business league" under I.R.C. § 501(c)(6) (1982). The forty-nine members of STA are businesses associated with the maritime industry in the Port of Baltimore.

A primary function of STA is the negotiation of collective bargaining agreements on behalf of its members with the International Longshoremen's Association and local unions. STA also serves as a vehicle for resolving disputes between its members and their employees which arise under these agreements. The collective bargaining agreements call for, among other things, vacation pay and a guaranteed annual income to be provided to employees by employers who are members of STA. These benefits are calculated based on the number of hours each longshoreman works.

The calculation of each longshoreman's eligibility—and each employer's concomitant liability—for the vacation and guaranteed annual income benefits is complicated by the fact that longshoremen usually work for several different companies during the year. STA aids its members in resolving this problem by serving as a central repository for payroll information. Specifically, STA collects from its members information regarding the number of hours each longshoreman has worked, computes the assessment rate that its members must pay to support the vacation and annual income accounts, collects the assessments, pays the appropriate benefits to the eligible employees, and reports to the union with respect to STA's performance of these functions. STA employs the Service Bureau Corporation, a private for-profit company, to assist it in this task. Service Bureau receives the raw payroll data from STA and, through the use of computers, puts the information in a form that STA can use to track each longshoreman's eligibility for benefits.

STA collects vacation pay and guaranteed annual income assessments only from its members who employ longshoremen. The vacation pay assessment ranged from $.80 per man-hour in 1975 to $1.45 per man-hour in 1977. From these amounts, STA retained $.08 per man-hour as its fee for administering the account. The guaranteed annual income assessment was a constant $.15 per man-hour. From these payments, STA retained $.02 per man-hour as an administration fee. Some of the surplus from these retained fees, after STA paid its administration costs, were used to fund a reserve to be employed in case of an emergency, such as a shutdown as a result of an accident or natural disaster. Each member of STA also pays $350 in annual dues.

On audit, the IRS determined that the administration and management of the two accounts constituted the conduct of an unrelated trade or business, and consequently the retained fees were subject to tax under I.R.C. § 511(a) (1982). This resulted in tax assessments of $149,398 for tax year 1975, $126,927 for tax year 1976, and $94,779 for tax year 1977. STA filed suit in the Tax Court challenging the IRS' determination.

The Tax Court upheld the IRS' deficiency determinations, reasoning that although STA's activities in negotiating collective bargaining agreements and resolving disputes arising under such agreements were related to STA's exempt function, STA was compensated for those activities by annual dues. *Steamship Trade Association*, 81 T.C. at 315. The administration of the vacation pay and guaranteed annual income accounts, however, was held to be not so related, and STA was accordingly found liable for the tax on the retained amounts. *Id.* at 317.

## II.

I.R.C. § 511(a) subjects the unrelated business income of a tax exempt organization to income tax. I.R.C. § 512(a) (1982) defines the term "unrelated business taxable income" as "the gross income derived by any organization from any unrelated trade or business, ... regularly carried on by it." The term "unrelated trade or business" is defined in I.R.C. § 513(a):

The term "unrelated trade or business" means, in the case of any organization subject to the tax imposed by section 511, any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501....

Treas.Reg. § 1.513–1(a) (1967) provides:

[U]nless one of the specific exceptions of section 512 or 513 is applicable, gross income of an exempt organization subject to the tax imposed by section 511 is includible in the computation of unrelated business taxable income if: (1) It is income from trade or business; (2) such trade or business is regularly carried on by the organization; and (3) the conduct

of such trade or business is not substantially related (other than through the production of funds) to the organization's performance of its exempt functions.

We, therefore, analyze three separate factors to determine whether STA's administration of the two accounts generated unrelated business taxable income: (1) was STA engaged in a trade or business; (2) if so, was it regularly carried on; and (3) was the conduct of the business substantially related to STA's performance of its exempt functions. *See Carolinas Farm & Power Equipment Dealers Ass'n, Inc. v. United States*, 699 F.2d 167, 169 (4th Cir.1983). STA concedes that its account administration was regularly carried on. We need focus then only on whether this activity constituted a trade or business and whether it was substantially related to STA's exempt functions.

### III.

I.R.C. § 513(c) states that "the term 'trade or business' includes any activity which is carried on for the production of income from the sale of goods or the performance of services." In *Carolinas Farm, supra*, this court adopted an objective profit motive test to ascertain whether an activity is a "trade or business," and indicated that "there is no better objective measure of an organization's motive for conducting an activity than the ends it achieves." 699 F.2d at 170.

■ The fees retained by STA from the amounts paid to the two accounts by its members were substantially in excess of the amount STA received from dues.* From these calculations, it is apparent that STA received considerable financial benefits from its administrative service. This is persuasive evidence indicating that STA was engaged in a trade or business. *See Carolinas Farm*, 699 F.2d at 170.

STA argues that its activities were conducted in a non-commercial manner and thus fall within the limited exception recog-

nized though not addressed in *Carolinas Farm. See id.* at 170 n. 5 ("We intimate no view as to whether an activity conducted to earn income, but in a noncommercial manner, can be a trade or business.") The cases supporting this exception, however, are wholly inapposite to the facts presented on this appeal. In both *Disabled American Veterans v. United States*, 227 Ct.Cl. 474, 650 F.2d 1178 (1981) and *Hope School v. United States*, 612 F.2d 298 (7th Cir. 1980) it was held that the mailing of low-cost articles by a charitable organization to potential donors, accompanied by an appeal for funds, did not necessarily amount to a trade or business because the activity was not conducted in a competitive, commercial manner. We agree that there are instances where some activities by some exempt organizations to earn income in a noncommercial manner will not amount to the conduct of a trade or business. Without attempting to draw a differentiating rule, however, we are unwilling to extend this principle to cover situations where, as these facts demonstrate, a non-profit entity performs comprehensive and essential business services in return for a fixed fee.

### IV.

We also agree with the Tax Court that STA's action in retaining a portion of the assessment is not substantially related to its exempt functions. Treas.Reg. § 1.513–1(d)(1) (1967). For an activity to be substantially related to an organization's exempt purpose it must bear a substantial causal relationship or contribute importantly to the achievement of those purposes other than through the production of income. Treas.Reg. § 1.513–1(d)(2) (1967).

A business league is defined by regulation as "an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for

---

* In 1975, STA retained $606,350 from assessments while receiving $25,800 in dues. In 1976 it retained $540,932 and received $18,650 in dues. In 1977, retained fees from assessments equaled $502,323, while dues represented $18,800.

profit." Treas.Reg. § 1.501(c)(6)–1 (1960). The purposes of STA, as stated in its Articles of Incorporation, are to (1) advance and encourage transportation by water, stevedoring, and other accessory services in and about the Port of Baltimore, (2) promote friendly relations between its members and their employees, and (3) foster the general welfare of the Port of Baltimore.

The Tax Court recognized that STA's function as a contract negotiator and arbitrator was substantially related to these exempt purposes because they benefit the industry as a whole rather than any individual member. *Steamship Trade Association*, 81 T.C. at 315. The court held, however, that STA's administration of the vacation pay and guaranteed income accounts was separate and unrelated to its negotiation and arbitration activities, reasoning that the STA's administrative activity benefitted each member individually and proportionately and the service was one that could be performed by a for-profit organization. *Id.* at 315–17.

In *Carolinas Farm, supra,* this court identified three factors relevant to the resolution of the "substantially related" issue: (1) whether fees charged are directly proportionate to benefits received; (2) whether participation is limited to members and thus is of no benefit to those in the industry who are non-members; and (3) whether the service provided is one commonly furnished by for-profit entities. 699 F.2d at 171.

█ Here, members of STA who employed longshoremen were assessed at a fixed rate based on the number of man-hours worked by their employees. Thus, the more a member-company received from STA in terms of recordkeeping services, the more it was assessed. While the satisfactory performance of this service may have some beneficial effect on the industry as a whole by fostering labor-management harmony, this incidental synergy is not sufficient to overcome the bare fact that the primary beneficiaries of STA's activity are those members who take advantage of the service. *See Carolinas Farm, supra,* at 171; *Contracting Plumbers Cooperative Restoration Corp. v. United States*, 488 F.2d 684, 688 (2nd Cir.), *cert. denied,* 419 U.S. 827, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974); *Evanston-North Shore Board of Realtors v. United States*, 162 Ct.Cl. 682, 320 F.2d 375 (1963).

Second, STA concedes that only its members are eligible to participate in the administrative service. This indicates that the benefits of this service do not accrue to the industry as a whole, as opposed to activities such as lobbying services or educational programs. *See Carolinas Farm, supra* at 171; *Professional Insurance Agents v. Commissioner,* 726 F.2d 1097, 1103 (6th Cir.1984).

Third, as the Tax Court held, STA's activity in collecting and disbursing funds, receiving data from its members, transmitting the data to the Service Bureau Corporation, and accounting to the union with respect to these functions could be performed by for-profit entities. *Steamship Trade Association*, 81 T.C. at 311–13. We cannot agree with STA's contention that other appropriate commercial entities would decline to administer these funds if the opportunity were presented to them.

STA relies on two revenue rulings to support its allegation that the administration of the two accounts was substantially related to STA's exempt function. In Rev. Rul. 82–138, 1982–2 C.B. 106, the IRS ruled that a trust created pursuant to a collective bargaining agreement between a labor union and several business leagues for the purpose of collecting, administering, and disbursing funds to the member business leagues for business league purposes is exempt from taxation under I.R.C. § 501(c)(6). In that instance, unlike the circumstances of this appeal, the funds were disbursed "only for labor relations functions, public relations and legislative activities, promotion of employment, apprenticeship, vocational or training programs, and other programs to improve business conditions of the … industry." These functions are clearly distinguishable from the administrative service conducted by STA. Further, the ruling does not indi-

cate whether the trust earned any net income or whether the services performed were sufficiently substantial and regular to constitute a trade or business.

In Rev.Rul. 65–164, 1965–1 C.B. 238, the service ruled that a non-profit entity organized to conduct collective bargaining negotiations, interpret the resulting contracts, and settle labor disputes and whose sole income came from membership dues qualified as a tax-exempt business league. The Service reasoned that:

> negotiating contracts for the general membership, mediating or settling jurisdictional and other disputes, and furnishing general information are ... considered incidental activities since they further the common purpose with respect to the common labor problems of the business group *and do not represent services to individual members which they could purchase elsewhere.*

*Id.* at 239 (emphasis supplied). As the Tax Court recognized, STA's activities in negotiating and interpreting the collective bargaining agreement as well as resolving disputes was an exempt function. The administration of the two funds is wholly different from the activities discussed in Rev. Rul. 65–164 and are unrelated to its exempt functions.

Further, STA overlooks Rev.Rul. 66–151, 1966–1 C.B. 152, where the Service concluded that a business league's management of health and welfare plans for its members, for which it received a fixed fee for each employee covered by the plan, constituted "a business not substantially related to the functions forming the basis for the exemption of the organization." This scenario is closely analogous to STA's administration of the two accounts and buttresses the conclusion reached by the Tax Court.

### V.

Finally, STA argues that the Tax Court erred by failing to allot a portion of the retained amounts to STA's negotiation and dispute resolution functions.

The Tax Court recognized that STA's exempt activities included contract negotiation and arbitration. *Steamship Trade As-*

*sociation,* 81 T.C. at 315. STA fulfills this role through various committees. The Trade Practice Committee negotiates collective bargaining agreements and participates in the settlement of labor disputes. The Vacation Fund Committee administers the vacation pay account while the Pension and Benefits Fund Committee administers the guaranteed annual income account and, as the Service concedes, attempts to resolve disputes regarding the guaranteed annual income benefits.

STA contends that the portion of the retained funds representing compensation for dispute resolution activities is directly related to one of its exempt functions and thus not subject to tax. While this argument has some appeal, STA offered no evidence sufficient to establish a formula by which the Tax Court could accomplish this allocation. In view of this absence of proof, we cannot say that the Tax Court erred in refusing to apportion arbitrarily the funds in question.

For the foregoing reasons, the decision of the Tax Court is

AFFIRMED.