ILLINOIS ASSOCIATION OF PROFESSIONAL INSURANCE AGENTS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Illinois Asso. of Professional Ins. Agents, Inc. v. Commissioner
Docket No. 28717-81.
United States Tax Court
T.C. Memo 1985-105; 1985 Tax Ct. Memo LEXIS 528; 49 T.C.M. (CCH) 925; T.C.M. (RIA) 85105; March 7, 1985. William S. Hanley and Roberta Pilant Cona, for the petitioner. Matthew J. Fritz and Jeff P. Ehrlich, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax for the taxable years 1976 and 1977 in the amounts of $1,676.66 and $2,515.94, respectively. After concessions, the issue for decision is whether fees received by petitioner for performing various services in connection with errors and omissions insurance, which petitioner helped make available to its members, constituted unrelated business taxable income as defined by sections 512 and 513, [1] on which a tax is imposed under section 511. FINDINGS OF FACT Some of the facts have been stipulated. The stipulations *530 of facts and accompanying exhibits are so found and incorporated herein by reference. The Illinois Association of Professional Insurance Agents, Inc. (petitioner) is a not-for-profit corporation incorporated under the laws of the State of Illinois, with its principal office in Springfield, Illinois. Petitioner is an organization exempt from Federal income taxation by section 501, as a business league described in section 501(c)(6). Petitioner filed Forms 990 (Return of Organization Exempt from Income Tax) and 990-T (Exempt Organization Business Income Tax Return) for the taxable years 1976 and 1977 with the Internal Revenue Service Center at Philadelphia, Pennsylvania. Petitioner's bylaws provide that petitioner's objectives during the taxable years 1976 and 1977 were as follows: The objectives of this Association shall be to maintain and extend the American Agency System; to promote the equitable rights of its members; to provide its members with an increased knowledge of insurance underwriting and selling, loss prevention, and agency operation; to foster a high standard of insurance ethics and promote friendship in the insurance business; and to do all things to the end that *531 its members may better serve the public, their companies and themselves. Petitioner's membership is made up exclusively of independent insurance agents. Petitioner consisted of approximately 900 members during the taxable years at issue, most of whom were independent businessmen running one or two person insurance agencies in small communities. Petitioner received funds with respect to an errors and omissions insurance (hereinafter referred to as E & O insurance) program made available to its members during the taxable years 1976 and 1977, in the amounts of $16,777.92 and $21,756.85, respectively. E & O insurance was one of several insurance programs made available through the National Association of Professional Insurance Agents (hereinafter referred to as the National Association) for use by members of the various state associations of Professional Insurance Agents and other insurance agents. The National Association receives a percentage of the premiums as a service fee from the insurance companies offering the plans. The National Association then distributes a portion of such funds to the various state associations of Professional Insurance Agents for services rendered *532 on behalf of the National Association. E & O insurance is a type of professional malpractice insurance which protects an insurance agent from liability in the event that the client suffers a loss as a result of the agent's action or inaction. During the taxable years 1976 and 1977, petitioner's monthly publication, the Illini Smoke Signal, contained four articles recommending that its members obtain E & O or professional liability insurance. The articles did not recommend any particular insurer. During the same period, five issues of the Illini Smoke Signal contained advertisements for the National Association E & O insurance. During the taxable years 1976 and 1977, E & O insurance was also available from individual companies. The E & O insurance program has been a part of petitioner's offerings to its members since at least 1960. During the taxable years 1976 and 1977, only insurance agents who were members of petitioner obtained E & O insurance through petitioner's program. The premiums for the E & O insurance policies were determined on an individual basis, with individually set policy limits and deductible amounts. Among activities performed by petitioner in connection *533 with the E & O insurance program were: (a) listing of the program in petitioner's literature, including its membership applications and monthly publication; (b) maintaining application forms and rate schedules at its office; (c) responding to inquires requesting applications, mailing applications to requesting parties, reviewing applications sent to petitioner by individuals purchasing the insurance, and forwarding them to the National Association; and (d) informing members of the general need for E & O insurance through its publications. On August 28, 1981, the Commissioner issued a statutory notice of deficiency to petitioner determining deficiencies in income tax for the taxable years 1976 and 1977, in the amounts of $1,676.66 and $2,215.94, respectively. The Commissioner determined that the premiums received for the E & O insurance constituted unrelated business taxable income. [2]
OPINION After concessions, the issue for decision is whether fees received by petitioner for performing various services in connection with the E & O insurance program *534 constituted unrelated business taxable income as defined by sections 512 and 513, on which a tax is imposed under section 511. The Commissioner's determination in his statutory notice of deficiency is presumptively correct. Welch v. Helvering, 290 U.S.Ill (1933); Rule 142(a). The identical E & O insurance program offered through the National Association has previously been examined by this Court in Professional Insurance Agents of Michigan v. Commissioner,78 T.C. 246 (1982), affd. 726 F.2d 1097 (6th Cir. 1984). Respondent contends that our decision in that case is controlling, while petitioner has attempted to factually distinguish its situation. The resolution of whether these fees constitute unrelated business taxable income requires a three-step analysis under section 1.513-1(a), Income Tax Regs.: (1) Is the income derived from a trade or business; (2) Is the trade or business regularly carried on by the organization; and
*535 (3) Does the conduct of the trade or business bear a substantial relation (other than through the production of funds) to the organization's exempt purpose. Respondent argues that petitioner has conceded that services were performed, thus meeting the definition of a trade or business, and that petitioner has also conceded that the services have been performed over a period of not less than 17 years. Petitioner's contentions are that its activities are not a trade and business because there was no intent to make a profit, and because there was no unfair competitive advantage. Petitioner's arguments have been ably addressed in Professional Insurance Agents of Michigan v. Commissioner,supra. The record in this case, despite self-serving testimony to the contrary, clearly shows an objective intent to make a profit, the primary prerequisite for a trade or business. Siegel v. Commissioner,78 T.C. 659, 699 (1982). We also observe that petitioner's promotion of this program to its members in preference to the other available plans could work to the disadvantage of the competitors of the National Association's E & O insurance program. We do *536 not rely upon this factor for our holding that petitioner's E & O insurance program is a trade or business, as such competition is inherent in any trade or business. Sec. 513(c); sec. 1.513-1(b), Income Tax Regs.; Louisiana Credit Union League v. United States,693 F.2d 525, 542 (5th Cir. 1982). Further, as petitioner presented no evidence that the trade or business was not regularly carried on, it has failed to meet its burden of proof on that test. Rule 142(a). We hold, therefore, that petitioner's activities with respect to the E & O insurance program qualified as a regularly carried on trade or business under section 1.513-1(c), Income Tax Regs., and section 162. The primary area of controversy is whether such income was substantially related to petitioner's exempt purpose. To qualify as an exempt business league under section 501(c)(6), petitioner's members must have "some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily *537 carried on for profit." Sec. 1.501(c)(6)-1, Income Tax Regs. This regulation further provides that the activities of a business league "should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons." The exempt purposes to be served must, therefore, be of general benefit to its members. Section 1.513-1(d)(2), Income Tax Regs., further explains the necessary relationship between this exempt purpose and the trade or business: (2) Type of relationship required. Trade or business is "related" to exempt purposes, in the relevant sense, only where the conduct of the business activities has causal relationship to the achievement of exempt purposes (other than through the production of income); and it is "substantially related," for purposes of section 513, only if the causal relationship is a substantial one. Thus, for the conduct of trade or business from which a particular amount of gross income is derived to be substantially related to purposes for which exemption is granted, the production or distribution *538 of the goods or the performance of the services from which the gross income is derived must contribute importantly to the accomplishment of those purposes. * * * Petitioner argues that its exempt purposes, according to its bylaws, include both loss prevention and service to the public. Although it is clear that clients suffering losses are the beneficiaries of payments made under E & O insurance policies, such insurance serves the primary purpose of limiting the individual insured agent's liability for professional malpractice. Petitioner's activities with respect to the E & O insurance program simply generate revenue for the association and provide members with a convenient and economical service in the operation of their agencies, rather than contributing directly and importantly to the improvement of conditions in a particular line of business. Professional Insurance Agents of Michigan v. Commissioner,78 T.C. at 268. Accord, Carolinas Farm & Power Equipment Dealers Association, Inc. v. United States,699 F.2d 167, 171-172 (4th Cir. 1983); Louisiana Credit Union League v. United States,supra at 534-538; Steamship Trade Association of Baltimore, Inc. v. Commissioner,81 T.C. 303, 316-317 (1983). *539 The benefits of such insurance inure to each agent in direct correlation with his participation and his payment of premiums. Petitioners have failed to show any direct benefit to the common interests of its members as a whole. Professional Insurance Agents of Michigan v. Commissioner,supra.
We, therefore, hold that the income from petitioner's performance of services in connection with the E & O insurance program was derived from a regularly carried on trade or business bearing no substantial relation to petitioner's exempt purposes. Accordingly, such income, less allowable educations, is subject to the tax imposed by section 511(a). Professional Insurance Agents of Michigan v. Commissioner,supra.
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, and attendant regulations as amended and in effect for the relevant years, and all rule references are to this Court's Rules of Practice and Procedure.↩
2. The remaining adjustments in the statutory notice of deficiency have been resolved by concessions of the parties.↩