The **ENGINEERS CLUB OF SAN FRANCISCO,** Plaintiff,

v.

**UNITED STATES of America,** Defendant.

**No. C–83–5814–CAL.**

United States District Court, N.D. California.

Feb. 12, 1985.

Lawrence V. Brookes, Valentine Brookes, Brookes & Brookes, San Francisco, Cal., for plaintiff.

Jay R. Weill, Michael J. Yamaguchi, David L. Denier, Asst. U.S. Attys., Tax Div., San Francisco, Cal., for defendant.

## OPINION

LEGGE, District Judge.

Plaintiff, The Engineers Club of San Francisco seeks refunds with respect to income taxes which it paid for its fiscal years ended August 31, 1978 through 1981. The refunds are based on plaintiff's claim that it should have been taxed as a business league under 26 U.S.C. § 501(c)(6), rather than as a social club under 26 U.S.C. § 501(c)(7). The difference between a business league and a club primarily affects the method for calculation of unrelated business income under 26 U.S.C. §§ 511–513.

The case was tried without a jury and submitted for decision. The court has reviewed and weighed the testimony, the exhibits which were introduced into evidence, and the limited stipulation of facts. The court makes the following findings of fact and conclusions of law, and enters judgment in favor of plaintiff.[1]

### I.

Plaintiff is a corporation, organized and existing as a nonprofit corporation under the California Corporations Code. Plaintiff's corporate purposes are stated in its amended articles of incorporation:

"... to provide an organization in which Engineers of all branches of the Profession may come together, and through which they may cooperate and foster the development of the Engineering Profession as a whole in California and incidentally and in aid of such main purpose to acquire by purchase, lease or otherwise and conduct suitable quarters for a meeting place for carrying out such purposes."

1. The factual statements, and the conclusions of law and judgment which result from them, pertain to plaintiff's fiscal years ended August 31, 1978 through 1981.

Plaintiff's membership is composed primarily of professional engineers and persons associated with the engineering profession. Plaintiff serves its members, and the professional engineering societies to which they belong, by providing meetings and meeting space, logistical support, a location for operations, mailing service, telephone service, storage of records, and other facilities and services. Several of the engineering societies use plaintiff's address as their address. Plaintiff's manager coordinates the activities of some of the societies.

Plaintiff leases space in an office building in downtown San Francisco. The facilities consist of: the top two floors of the building, on one of which is located kitchen facilities, meeting and dining rooms, and on the other additional space and a bar; the administrative offices are located on another floor; and storage space is located in the basement. Meetings, seminars, educational presentations, and meal and beverage service take place in the rooms on the top two floors. The premises contain the records and equipment of plaintiff and of certain of the societies which use plaintiff's facilities.

The stipulation of facts records that during the years in question plaintiff's facilities were used extensively by over twenty engineering societies, and by other organizations associated with the engineering profession, the construction industry, and affiliated activities. The stipulation also states that other professional societies met at plaintiff's facilities periodically. Plaintiff's facilities are used by the engineering societies free of charge.

The meetings of the professional organizations are conducted primarily to provide professional education and training to members, and to disseminate information for the benefit of the profession as a whole. To reach a wide audience, many of the meetings are held outside of normal business hours, or are specially scheduled when the members of the professional societies are in the San Francisco area. A significant number of meetings occur during lunch hour or dinner time and include the service of meals and beverages. Typically, a society will have a technical meeting or an opportunity for members to exchange professional views, prior to or during a cocktail hour. There will then be a meal service of three quarters of an hour to an hour. There will then be a meeting, with an hour or two of technical presentation. Sometimes there are technical speakers during the meal service. Many of the meetings at plaintiff's facilities have no food or beverage service.

It is not necessary for a member of an engineering society to be a member of plaintiff in order to attend a society meeting, or to eat or drink preceding or during a meeting. The engineering society meetings are arranged by a member of plaintiff who is also a member of the particular society.

Not all of plaintiff's activities are in connection with engineering societies. Plaintiff's facilities are available for, and are used by, its members for purely social functions. Plaintiff itself offers its members certain social activities. And plaintiff's facilities are also open for meetings of other groups to which its members may belong, not necessarily of an engineering type. However, plaintiff gives preference to engineering societies over others in the use of its facilities.

II.

The Internal Revenue Service had classified plaintiff as a "club," exempt from some income tax under 26 U.S.C. § 501(c)(7). In November 1981, plaintiff filed with the Internal Revenue Service a written request for a determination that it qualified for many years, including fiscal years 1978 through 1980, as a "business league" exempt under 26 U.S.C. § 501(c)(6). The IRS issued a ruling denying that exempt status in July 1982. The denial was timely protested, and hearings at the national office of the IRS took place in January 1983. The IRS issued a letter affirming its denial of that exempt status in March 1983.

This action seeks a refund of income taxes for plaintiff's fiscal years ended Au-

gust 31, 1978 through 1981. On its original returns, plaintiff calculated its income taxes based upon its being a club under Section 501(c)(7). Timely claims for refund were filed with IRS for each of the fiscal years in question. The refund claims were based on plaintiff's assertion that it is a business league under Section 501(c)(6). The refunds were denied and this suit was filed. This court has jurisdiction under 28 U.S.C. §§ 1340 and 1346(a)(1), and 26 U.S.C. § 7422(a).

The issue is whether during the years in question plaintiff should be classified as a club or as a business league. The dispute centers on plaintiff's food and beverage operation and its social activities.

### III.

The exemptions for clubs and business leagues are defined in Title 26 Sections 501(c)(6) and (7) as follows:

(6) Business leagues, chambers of commerce, real-estate boards, boards of trade or professional football leagues (whether or not administering a pension fund for football players), not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

(7) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder.

The IRS has adopted regulations under those two sections.[2] Those regulations and their predecessors have been in effect for years and have acquired the effect of law. *See National Muffler Dealers Assoc. v. United States*, 440 U.S. 472, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979); *North Carolina Association of Insurance Agents v. United States*, 739 F.2d 949 (4th Cir.1984).

### A.

■ Plaintiff asserts that the IRS is collaterally estopped from claiming that plain-

2. Treas.Reg. § 1.501(c)(6)–1 (1984). Business leagues, chambers of commerce, real estate boards, and boards of trade.

A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. An association engaged in furnishing information to prospective investors, to enable them to make sound investments, is not a business league, since its activities do not further any common business interest, even though all of its income is devoted to the purpose stated. A stock or commodity exchange is not a business league, a chamber of commerce, or a board of trade within the meaning of section 501(c)(6) and is not exempt from tax. Organizations otherwise exempt from tax under this section are taxable upon their unrelated business taxable income. See part II (section 511 and following), subchapter F, chapter 1 of the Code, and the regulations thereunder.

Treas.Reg. § 1.501(c)(7)–1 (1984). Social clubs.

(a) The exemption provided by section 501(a) for organizations described in section 501(c)(7) applies only to clubs which are organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, but does not apply to any club if any part of its net earnings inures to the benefit of any private shareholder. In general, this exemption extends to social and recreation clubs which are supported solely by membership fees, dues, and assessments. However, a club otherwise entitled to exemption will not be disqualified because it raises revenue from members through the use of club facilities or in connection with club activities.

(b) A club which engages in business, such as making its social and recreational facilities available to the general public or by selling real estate, timber, or other products, is not organized and operated exclusively for pleasure, recreation, and other non-profitable purposes, and is not exempt under section 501(a). Solicitation by advertisement or otherwise for public patronage of its facilities is prima facie evidence that the club is engaging in business and is not being operated exclusively for pleasure, recreation, or social purposes. However, an incidental sale of property will not deprive a club of its exemption.

tiff is a club by virtue of *United States v. Engineers Club of San Francisco*, 325 F.2d 204 (9th Cir.1963). The Ninth Circuit there affirmed a decision of the district court that plaintiff was not a "social club" within the meaning of Section 1710 of the Internal Revenue Code of 1939 and Section 4241 of the 1954 Code, with respect to excise taxes on dues and initiation fees. That case is helpful to plaintiff here, but is not collateral estoppel for the following reasons: First, the tax statutes involved were different and presented the issue of whether plaintiff was a social or a non-social club, not the issue of whether it is a club or a business league. In addition, the facts involved in that issue were for the years 1952 through 1959, while the facts involved here occurred approximately twenty years later. There was testimony during the trial of this case that the nature of plaintiff's operations had not changed, but the testimony was conclusionary in nature and not factually probative. Further, plaintiff has accepted the tax benefits of being a club under section 501(c)(7) for several years, and cannot claim that it has relied upon the 1963 decision for purposes of its income taxes at issue here.

The method of analysis used by the Ninth Circuit in the 1963 case is instructive here. The court looked at the basic purposes and programs of plaintiff, and said that there is a recognized rule that if the basic purposes and programs are essentially technical and professional, then incidental and limited social features such as meals and beverages will not make it social; 325 F.2d at 206.

### B.

■ Since the 1963 decision is not dispositive, this court must return to the statutes, the regulations, and the cases which have interpreted them.

Numerous cases have been decided on the issue of whether an organization is or is not a business league under Section 501(c)(6). However, those decisions were primarily factual and provide only limited guidance. In *National Muffler Dealers Association v. United States, supra,* the Supreme Court upheld the decisions of the lower court that the taxpayer there was not a business league because it consisted only of the franchisees of one company, and was not therefore a "line of business" as defined in the regulations. In the present case, however, this court finds that plaintiff's activities do promote the whole of the profession of engineering and its related activities. In *North Carolina Association of Insurance Agents v. United States, supra,* the taxpayer was also denied exemption as a business league. It was engaged in a business, being the sole insurance agent for the State of North Carolina. The court therefore concluded that it was engaged in a regular business of a kind ordinarily conducted for profit. The United States here contends plaintiff is similarly engaged in a regular business, because of its restaurant and beverage operations. This issue will be discussed below, but the *North Carolina* decision was based upon the facts and circumstances in that case and does not resolve the issues here. Other cases have granted or denied taxpayers status as business leagues, depending upon the facts of the taxpayers' operations in each case. *See, e.g., American Institute of Interior Designers v. United States,* 208 F.Supp. 201 (N.D.Cal. 1962); *Association Master Barbers and Beauticians v. Commissioner,* 69 T.C. 53 (1977); *American Automobile Association v. Commissioner,* 19 T.C. 1146 (1953).

The parties here agree that under the statutes, regulations, and cases, there are six applicable requirements to be a business league under Section 501(c)(6):

(1) It must be an association of persons having a common business interest.

(2) Its purpose must be to promote that common business interest.

(3) It must not be organized for profit.

(4) It should not be engaged in a regular business of a kind ordinarily conducted for a profit. But a business activity will not cost an organization its exemption as a business league if the activity is merely

incidental to the main purposes of the organization.

(5) Its activities should be directed toward the improvement of business conditions of one or more lines of business, as opposed to the performance of particular services for individual persons.

(6) Its net earnings, if any, must not inure to the benefit of any private shareholder or individual.

The parties agree that plaintiff here meets the first three requirements, but the second three are in dispute. Those disputes center around the food, beverage, and social activities of plaintiff. The court therefore turns to an examination of those activities to determine whether requirements 4, 5 and 6 have been met. In examining the facts and requirements, the court notes that the burden of proof is upon the taxpayer, and that tax exemptions are narrowly and strictly construed in favor of the United States; *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Associated Barbers and Beauticians v. Commissioner, supra.*

## IV.

The general activities of plaintiff have been discussed above, based upon the stipulation of facts and upon findings of fact which the court is satisfied are proved by a preponderance of the evidence.

Plaintiff is a membership club, and its membership is not open to all persons, not even all engineers, who wish to apply. However, the record indicates that at least two other membership clubs have also been classified by defendant as business leagues. They are The World Trade Club and The San Francisco Commercial Club.[3] The court finds, by a preponderance of the evidence and by the applicable law, that plaintiff's professional operations, standing alone, would qualify it as a business league. The question then is the effect of plaintiff's food, beverage and social activities.

It is difficult to quantify precisely, either numerically or by percentages, the extent of the food, beverage and social activities. The parties did not present plaintiff's regular financial statements. And its books were generally kept in such a manner as to satisfy the IRS's reporting requirements under Section (c)(7), rather than to show information helpful to determine whether plaintiff is entitled to (c)(6) status. The amount of "social" gross revenue could not be precisely determined. There were also definitional difficulties in evaluating the testimony of the witnesses and the exhibits, on such questions as: what was "social" versus "business"; what was "member" versus "non-member"; whether an activity was "banquet" or some other type of gathering; and whether specific events were "social" or "business" in nature. However, the testimony and the exhibits are sufficient to establish the following by a preponderance of the evidence.

During the years in question approximately two-thirds of plaintiff's gross revenue was from the sale of food and beverage. During those years, dues increased from $332,000. to $453,000., while food and beverage sales increased from $642,000. to $855,000. The policy of plaintiff's board of directors was to break even on the combined food and beverage operations, and leave the dues and initiation fee income to cover fixed costs and general and administrative expenses. Any profit from the food and beverage operations could have been used to defray other expenses, but there was uncontradicted testimony that such a surplus would actually be put into investments for capital development. One exhibit showed that for the four years in question there was a total combined net profit of approximately $25,000. Another exhibit showed that the food and beverage operation actually resulted in a net loss during those years. Whichever exhibit was more accurate, it is clear that there was in fact

---

**3.** There was no direct testimony regarding The San Francisco Commercial Club. However, mention of its status as a business league was contained in documents admitted into evidence, and the hearsay objection to those documents was waived.

little, if any, net profit from the combined food and beverage operations.

With respect to the use of plaintiff's facilities, the record is clear that extensive use was made by engineering societies and by plaintiff's members for business purposes. There were also some purely social events. The club manager estimated twelve or so social events per year. From the listing of plaintiff's activities in the exhibits, it appears that the purely social events were a very small percentage of the total usage, and they were far outweighed by business meetings. The government's witness estimated that 34% of plaintiff's banquet business was social, and that the banquet social use constituted approximately seven to eight per cent of the club's gross sales. The government's witness also estimated that the usage of plaintiff's facilities was approximately 90% business and 10% social. From a numerical point of view, therefore, plaintiff has established by a preponderance of the evidence, even construing the evidence most favorably to defendant, that at least 90% of its food and beverage operations were business related, and no more than 10% were social.

Another factor is as important as numbers and percentages. That is, the degree to which the activities of the plaintiff—including its food, beverage and social usage aided the basic purposes and programs of its technical and professional activities; *U.S. v. Engineers Club of San Francisco, supra*, p. 206. Under that functional test, the food and beverage, and to a lesser degree the social activities, do serve those purposes. The food and beverage service are usually short compared with the business portions of the meetings. All of the plaintiff's public rooms are used for the meetings and conferences. Some of the rooms are used for meetings during the day, with no food and beverage service. During the years in question, engineering societies used plaintiff's facilities for meetings on an average of three and one-half

nights per week. The engineering societies' meetings were open to all engineers who were members of those societies, whether they were members of plaintiff or not. And as high as 75% of the persons attending the meetings of the societies were not members of plaintiff. Most of the time of the staff of plaintiff was spent on the activities of the societies. The focus of plaintiff's operations, both the business meetings without food and beverage and those activities which included food and beverage, was on the promotion of the engineering profession, the activities of the profession and its related endeavors, and the professional development of persons connected with them.

The court therefore concludes under requirement No. 4 that plaintiff was not engaged in a regular business of a kind ordinarily conducted for profit, and that its food, beverage and social activities were incidental to its professional objectives. Under requirement No. 5, the activities of plaintiff were directed toward the improvement of business conditions of a line of business, as opposed to the performance of particular services for individual persons. And under requirement No. 6, plaintiff's net earnings, if there were any, did not inure to the benefit of any private shareholder or individual.[4] The requirements for a "business league" under the regulations were therefore satisfied.

## V.

For the fiscal years ended August 31, 1978 through 1981, plaintiff was entitled to be taxed as a business league under 26 U.S.C. § 501(c)(6).

Plaintiff is entitled to judgment against defendant for the refunds sought for each of the years in question: $245.00 for the fiscal year ended August 31, 1978; $1,223.00 for the fiscal year ended August 31, 1979; $153.00 for the fiscal year ended August 31, 1980; and $5,944.00 for the fiscal year ended August 31, 1981; togeth-

**4.** Defendant does not contest that plaintiff was a club under (c)(7). And the last element for status as a club under (c)(7) is essentially identical to this last requirement for a business league under (c)(6).

er with interest on each of those sums; and costs of suit.

The court denies plaintiff's request for attorneys' fees under 26 U.S.C. § 7430. The issue was sufficiently close that defendant should not be penalized for contesting plaintiff's claims. And in view of the sums of money involved, this action was primarily in the nature of a declaratory judgment proceeding to establish plaintiff's status as a Section 501(c)(6) business league.

Plaintiff is to submit within ten days a proposed form of judgment setting forth the decisions stated in this section V.