The **ENGINEERS CLUB OF SAN FRANCISCO, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 85–1964.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 1986.

Decided June 6, 1986.

Lawrence V. Brookes, Valentin Brookes, Brookes & Brookes, San Francisco, Cal., for plaintiff-appellee.

Robert Pomerance, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Before BROWNING, TANG, and BEEZER, Circuit Judges.

TANG, Circuit Judge:

Plaintiff/Appellee, the Engineers Club of San Francisco, filed suit in federal district court seeking reclassification as a business league under IRC § 501(c)(6), 26 U.S.C. § 501(c)(6). A business league classification would entitle Engineers Club to income tax refunds on its unrelated business income for the years 1978–81. The district court held that Engineers Club met the requirements of § 501(c)(6) and qualified as a business league, 609 F.Supp. 519. We reverse.

## FACTS

Engineers Club is a nonprofit corporation formed in 1912. According to its amended articles of incorporation, Engineers Club's purpose is:

> to provide an organization in which Engineers of all branches of the Profession may come together, and through which they may cooperate and foster the development of the Engineer Profession as a whole in California and incidentally and in aid of such main purpose to acquire by purchase, lease or otherwise and conduct suitable quarters for a meeting place for carrying out such purpose.

Membership is open to and composed primarily of professional engineers.

Engineers Club leases space on the top two floors in an office building in downtown San Francisco. The facility consists of a large kitchen, meeting and dining rooms, a bar, a combination game-grill room, and a library-reading room. Administrative offices and storage rooms are located on other floors. The Club is open daily and serves lunch to its members and their guests.

The Club serves its members, and the professional societies to which they belong, by providing meetings and meeting space, logistical support, a location for operations, mailing service, telephone service, storage of records, and other facilities and services. Members of the Club may reserve Club facilities for their own purposes. Club facilities are mostly reserved for meetings and seminars conducted by the professional societies to which members belong. The professional societies are not charged a fee for the use of the facilities but only for the food, liquor or tobacco furnished. The entire membership of a professional society, including non-Club members, is invited to attend such events.

During the years in question, the Club was used by over twenty engineering societies and other organizations associated with the engineering profession. The meetings of the professional organizations are conducted primarily for the purpose of providing professional education and train-

ing to their members, and to disseminate information for the benefit of the profession as a whole. Toward this end many of the meetings are held outside normal business hours, or are specially scheduled when the members of the professional societies are in the San Francisco area. A significant number of meetings occur during the lunch hour or at dinner time and include the service of meals and beverages.

Since 1935, the Internal Revenue Service has classified Engineers Club as a "social club," exempt under IRC § 501(c)(7), 26 U.S.C. § 501(c)(7), from some income tax.[1] In November 1981, Engineers Club filed a written request with the IRS seeking reclassification as a business league retroactively to include fiscal years 1978–80. The IRS issued a ruling denying the exempt status in July 1982. The denial was timely protested and hearings took place in January 1983. The IRS issued a letter affirming its denial of the requested status in March 1983. Timely claims for refunds were filed with and denied by the IRS. Engineers Club filed suit in district court for reclassification and income tax refunds.

## DISCUSSION

### COLLATERAL ESTOPPEL

■ At trial, Engineers Club first raised the bar of collateral estoppel. The district court rejected this claim and the Club renews it on appeal.

Engineers Club asserts that the government is collaterally estopped from claiming that the Club is a social club by virtue of *United States v. Engineers Club of San Francisco*, 325 F.2d 204 (9th Cir.1963). We there affirmed the ruling of the district court that Engineers Club was not a "social club" within the meaning of § 4241 of the 1954 Code with respect to excise taxes on its dues and initiation fees.

Essentially, Engineers Club argues that since it is not a social club, it must then be

a business league. This argument is without merit.

The issue before us is whether Engineers Club qualifies under § 501(c)(6) as a business league, thus entitling it to a tax exemption on its unrelated business income. Our 1963 decision did not address or interpret Internal Revenue Code § 501(c)(6). Section 501(c)(6), unlike Section 4241 (now repealed), imposes specific restrictions on the manner in which a qualifying business league promotes the business interests of its members. Since the 1963 decision addressed a distinctly different issue under another section of the Tax Code, that decision has no collateral estoppel implications for the instant case.

### SECTION 501(c)(6)

Organizations designated business leagues under IRC § 501(c)(6) are exempt from the payment of tax on such organization's unrelated business income, including investment income. The government argues that the district court incorrectly characterized Engineers Club as a business league.

### STANDARD OF REVIEW

Engineers Club argues on appeal that the district court's conclusion that Engineers Club qualifies as a business league is a finding of fact that may not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a).

The government argues that the issue on appeal is not factual, but legal. The government submits that the appeal turns on the correct application of the statute and regulations, as illuminated by the case law, to the facts found by the district court.

We believe the inquiry presented most resembles a mixed question of fact and law, which we review *de novo*. *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) ("if ... a question requires us to consider legal

---

**1.** Section 501(c)(7) confers tax exempt status but requires tax to be paid on unrelated business income.

concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles ... the question should be classified as one of law and reviewed de novo."). *Accord MIB, Inc. v. Commissioner*, 734 F.2d 71, 76 (1st Cir. 1984) (reviewing "business league" classification *de novo* ).

## ANALYSIS

IRC § 501(c)(6) provides an unrelated business income exemption for:

> Business leagues, chambers of commerce, real estate boards, boards of trade, or professional football leagues ... not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

According to the long-accepted regulatory definition, a "business league" is:

> [A]n association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league.

Treas.Reg. § 1.501(c)(6)–1 (1983). Having been left undisturbed despite numerous reenactments of identically-worded predecessors to I.R.C. § 501(c)(6), this definition is deemed to have been given the imprimatur of Congress and is thus entitled to the effect of law. *North Carolina Association of Insurance Agents, Inc. v. United States*, 739 F.2d 949, 954 (4th Cir.1984); *Underwriters' Laboratories v. Commissioner*, 135 F.2d 371 (7th Cir.1943).

Thus, for an organization to achieve business league status, the requirements as stated in Treas.Reg. § 1.501(c)(6) must be met. Section 1.501(c)(6) requires a business league to be an association (1) of persons having a common business interest; (2) whose purpose is to promote the common business interest; (3) not organized for profit; (4) that does not engage in a business ordinarily conducted for profit; (5) whose activities are directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons; (6) of the same general class as a chamber of commerce or a board of trade. The government concedes that Engineers Club is: (1) an association of persons having a common business interest; (2) one purpose of which is to promote that common business interest; and (3) the club is not organized for profit. Thus, Engineers Club meets requirements (1)–(3).

The district court based its determination that Engineers Club qualifies as a business league by applying a functional analysis to the "incidentalness" exception of requirement (4), the 'Business Ordinarily Conducted for Profit' prohibition. Although a business league should not be engaged in a regular business of a kind ordinarily conducted for a profit, a business activity will not cost an organization its exemption as a business league if the activity is merely incidental to the main purpose of the organization. *Retailers Credit Association v. Commissioner*, 90 F.2d 47, 51 (9th Cir. 1937).

We assume, without deciding, that the district court was not clearly erroneous in determining that the Engineers Club food and beverage service was incidental to the main purpose of the organization. We find, however, that the district court's "functional" test did not adequately address requirements (5) and (6). Our examination of these latter requirements leads us to conclude that Engineers Club fails to qualify for business league classification.

*Particular Services for Individual Persons*

■ Section 1.501(c)(6) requires that a business league be "directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons." The district court failed to address this requirement.

In fact the club did and does provide particular services, chiefly food and beverage service, to its individual members. Although we recognize that the food and beverage service also confers a general benefit on the engineering profession, the food and beverage service, and particularly the luncheon trade, is a service performed for individual persons and organizations rather than the engineering profession as a whole.

Organizations frequently fail to qualify for business league status even though their activities confer collective benefits. For example, in *MIB, Inc. v. Commissioner*, 734 F.2d 71 (1st Cir.1984), an insurance industry established non-profit corporation operated a computer storage and retrieval bank from which each member company could obtain, for a fee, data relevant to insurance sales. This service, the court said, may "confer[ ] a general benefit upon all members and act[ ] in the collective interest," *id.* at 78, chiefly as a deterrent to applicant fraud. Nevertheless, the court ruled that the organization failed to qualify as a business league. The collective benefit, although real, did not alter the fact that the rendered services were in form and substance "particular services for individual persons." *Id.* at 78. *See also, Contracting Plumbers Cooperative Restoration Corp. v. United States*, 488 F.2d 684, 688 (2d Cir.), *cert. denied*, 419 U.S. 827, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974) (repair of city streets, although of benefit to entire trade and to public, nevertheless the "performance of

particular service for individual members"); *Steamship Trade Association of Baltimore, Inc. v. Commissioner*, 757 F.2d 1494, 1498 (4th Cir.1985) (incidental synergy not sufficient to overcome "performance of particular service for individual members" prohibition).

*Same General Class as a Chamber of Commerce or a Board of Trade*

Section 1.501(c)(6) also states that a business league "is an organization as the same general class as a chamber of commerce or a board of trade." Again, the district court failed to discuss this requirement.

In *MIB, Inc. v. Commissioner*, 734 F.2d at 78 n. 5, the court noted:

In *National Muffler Dealers Ass'n v. United States*, 440 U.S. [472,] 480–82, 99 S.Ct. [1304] at 1308–09 [59 L.Ed.2d 519] [1979], the Supreme Court traced the genesis, and confirmed the significance, of the sentence in the regulation that a business league "is an organization *of the same general class* as a chamber of commerce or board of trade." (Emphasis supplied.) Reference to these organizations is meant, under the principle of *noscitur a sociis*, to limit business league classification to organizations which share the same general characteristics. 440 U.S. at 481, 99 S.Ct. at 1309.

The fact that an organization conducts professional programming of its own has long been an important consideration. Rev.Rul. 67–295; Rev.Rul. 70–244; Rev. Rul. 70–641; Rev.Rul. 71–504; Rev.Rul. 70–505. Engineers Club does not itself conduct professional programming; rather, it hosts the professional societies and groups to which its members belong.[2] The absence of Club conducted professional programming suggests that any resemblance to a chamber of commerce or a board of trade is, at best, weak.

---

**2.** The Club's performance of particular services for its members further distinguishes it from a board of trade or chamber of commerce. "Prominent among the characteristics of boards of trade and chambers of commerce is the emphasis on improving trade and commerce by

activities which serve business people and members of the community *in common,* not individually." *MIB, Inc.,* 734 F.2d at 78, n. 5; *see also Nat'l. Muffler Dealers Ass'n,* 440 U.S. at 478, 99 S.Ct. at 1307.

## CONCLUSION

The district court's functional test ignores important language of treasury regulation 1.501(c)(6). In order to qualify for a business league classification, each and every requirement of 1.105(c)(6) must be met. On the facts before us, Engineers Club fails to qualify for business league status. The judgment of the district court is therefore

REVERSED.