**TEXAS APARTMENT ASSOCIATION,**
Plaintiff–Appellee,

v.

**UNITED STATES of America,**
Defendant–Appellant.

No. 88–1200.

United States Court of Appeals,
Fifth Circuit.

April 13, 1989.

Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Robert A. Bernstein, Asst. Atty. Gen., Gary R. Allen, Chief, William S. Rose, Jr., Asst. Atty. Gen., Washington, D.C., Martha B. Brissette, Atty., Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., defendant-appellant.

Michael Lynn Cook, Joe Garcia, Jr., Austin, Tex., for plaintiff-appellee.

Before BROWN, JOHNSON and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The United States appeals the district court's judgment awarding a tax refund to the Texas Apartment Association. The court based this judgment on its finding that the Association was exempt from the unrelated business income tax on funds it received from the sale of a landlords' manual and preprinted lease forms. We find no error and affirm.

## I.

The Texas Apartment Association (TAA), a tax-exempt trade association under 26 U.S.C. § 501(c)(6), seeks to promote the apartment industry throughout Texas. TAA membership is open to owners of multi-family units and service companies who pay annual dues of $35; its members operate about sixty percent of Texas' multi-unit rental housing.

TAA's objectives include (1) developing a sense of responsibility to the public among apartment owners and managers; (2) improving apartment management practices; (3) promulgating and enforcing a code of ethics for apartment owners and managers; and (4) lobbying in the state legislature and before state agencies on behalf of apartment owners. Essentially, TAA tries to anticipate controversies involving landlord-tenant issues and head off any public backlash by addressing them in its educational efforts and leases.

Because TAA's dues don't cover its costs, the association sells ads in its quarterly magazine and receives an administration fee for offering medical insurance to its members; both sources are taxable unrelated business income. The rest of TAA's revenue comes from the sale of (1) preprinted lease forms, property inventories, rental applications and pet agreements; and (2) a landlord's manual, known as the "*Redbook*" which contains statutes, case law, commentary and copies of the TAA lease forms. TAA has copyrighted all of these materials.

TAA's general counsel updates the forms and *Redbook* roughly every other year to reflect changes in Texas landlord-tenant law generated in the legislature and courts. In some areas, such as habitability standards for rental properties, the TAA lease exceeds the state's minimum statutory requirements. TAA and its local affiliates use the forms and *Redbook* at their semi-

nars for owners and managers. In addition, TAA's general counsel frequently discusses the *Redbook* and lease forms in the column he writes for TAA's monthly newsletter.

Only TAA members can buy or use TAA lease forms and *Redbooks*. But the association does distribute free copies to a law school and to state officials, including justices of the peace. TAA's bylaws prohibit local affiliates from marketing competing forms or manuals, although some members prepare documents for their own use. At least two for-profit companies sell preprinted lease forms in Texas; one of those companies also sells a manual called *Landlording*. These materials do not specifically incorporate Texas law as TAA's materials do.

TAA sells sets of 100 lease forms to affiliates for about $10; the affiliates resell them to members at anywhere from $17 to $23. Similarly, TAA sells the *Redbooks* to affiliates for $25 for resale at prices from $30 to $50. TAA does not set the resale price. The sale of forms and *Redbooks* provided about a third of TAA's $3 million operating revenues for fiscal years 1983 through 1985, and net profits of $237,405.

The Commissioner of Internal Revenue determined that TAA owed $60,950 in income tax on its sales of lease forms and *Redbooks* for fiscal years '83, '84 and '85 under the unrelated business income tax, 26 U.S.C. § 511(a). TAA paid the deficiencies and interest, and sued for a refund under 28 U.S.C. § 1346(a)(1). After a bench trial the district court concluded that the lease forms and *Redbook* were substantially related to TAA's exempt purpose, and awarded TAA a refund of $68,814.39 plus interest. The government appeals.

## II.

### A.

26 U.S.C. §§ 501(a) and (c)(6) [1] exempt "business leagues" such as TAA, which promote members' common business inter-

ests without engaging in regular business activities ordinarily carried on for profit, from income tax. However, § 511(a)(1) taxes the unrelated business income of these tax-exempt organizations. In fashioning the unrelated business income tax, Congress sought to prevent tax-exempt organizations from competing unfairly with businesses whose earnings are taxed. See *United States v. American Bar Endowment,* 477 U.S. 105, 114, 106 S.Ct. 2426, 2432, 91 L.Ed.2d 89 (1986).

Section 513 defines an "unrelated trade or business" as one "which is not substantially related ... to the exercise or performance by such organization" of its exempt function. Stated another way, the activity must "contribute importantly" to the league's exempt purposes for the income it generates to qualify for tax exemption. Treas.Reg. § 1.513–1(d)(2).

■ Treas.Reg. § 1.513–1(a) distills these sections of the code into a three-step test. The government can tax TAA's lease form and *Redbook* income as unrelated business income if the (1) income comes from a trade or business; (2) which is regularly carried on by the organization; and (3) is not substantially related to the organization's performance of its exempt function. *Louisiana Credit Union League v. United States,* 693 F.2d 525, 530–31 (5th Cir.1982). An exempt organization's general need for funds, standing alone, does not establish the necessary substantial relationship. *Id.* at 534; 26 U.S.C. § 513(a).

The parties agreed below that the *Redbook* and lease form sales constitute a trade or business regularly carried on by TAA. Thus, we review only the district court's findings that TAA developed the lease forms and *Redbook* "as part of its efforts to ... further its exempt purposes." Among other things, the court found as matters of fact that (1) updating the forms and *Redbook* to reflect Texas law promoted self-regulation among TAA landlords; (2) those landlords learned about their duties through the lease forms, *Red-*

---

**1.** Congress reenacted the relevant provisions of the Internal Revenue Code of 1954 (26 U.S.C.) in the Internal Revenue Code of 1986 under the same section numbers. See Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, § 2.

*books* and seminars at which these items were used; and (3) this educational process improved the standards of TAA apartment owners and managers.

### B.

Initially, the government urges us to review the district court's findings de novo as conclusions of law. The government relies on *Engineers Club v. United States,* 791 F.2d 686, 688–89 (9th Cir.1986), and *MIB, Inc. v. Commissioner,* 734 F.2d 71, 76 (1st Cir.1984), both of which applied de novo review to district court findings regarding whether particular entities constituted "business leagues." TAA argues that we should treat the substantial relationship question as an issue of fact and review the court's findings under Fed.R. Civ.P. 52(a).

We decline the government's invitation and review the findings for clear error under Rule 52(a). This court already has applied the clearly erroneous standard to findings regarding substantial relationship, which we have characterized as "necessarily a fact-based inquiry." *Louisiana Credit Union League,* 693 F.2d at 533–35; see also *Hi–Plains Hospital v. United States,* 670 F.2d 528, 533 (5th Cir.1982) (applies clearly erroneous standard to trial court's determination that hospital's sale of drugs was not "exempt activity" under the tax code). We conclude that the district court did not err in finding a substantial relationship here.

*Louisiana Credit Union League* set out a two-step test for determining the substantial relationship issue. Under the test, an income-producing activity is substantially related to the exempt function if the (1) activity is "unique to the organization's tax-exempt purpose; and (2) "direct benefits flowing from a business league's activities . . . inure to its members in their capacities as members of the organization." *Louisiana Credit Union League,* 693 F.2d at 535–36.

In describing the test's first step, this court stated that "[i]t is the distinctiveness of the activity that cements the substantial relationship" with the tax-exempt purpose.

*Id.* at 535. Further, we have noted that educational and training programs, along with legislative lobbying, clearly satisfy the uniqueness test. *Id.* The district court's finding that TAA specifically designed the lease forms and *Redbook* to reflect current law regarding the apartment industry in Texas finds ample record support.

The government relies on the availability of other lease forms and the *Landlording* manual to argue that TAA's products compete with essentially similar materials sold by commercial entities. However, the testimony at trial established that neither the lease forms nor *Landlording* specifically incorporate Texas law. *Landlording,* which describes itself as "A Handymanual for Scrupulous Landlords and Landladies Who Do It Themselves," provides largely practical tips for novice property managers such as how to get good tenants, hire help, and choose insurance. In contrast, the *Redbook* compiles and comments on a range of specific Texas and federal statutes; it covers such areas as forcible entry and detainer, landlords' liens, habitability and utility rules.

Similarly, the sample lease forms in *Landlording* and those the government provided from commercial stationers do not incorporate Texas law specifically, as the more sophisticated TAA lease forms do. The uncontradicted testimony of Larry Niemann, TAA's general counsel, established that the lease form sold by a commercial stationer in Dallas did not comply with the requirements for exercising a landlord's lien; contained illegal liquidated damages provisions; and failed to describe situations that could result in security deposit deductions as required by statute. Niemann described similar deficiencies in two other leases that the government characterizes as similar to TAA's.

The significant differences between TAA's materials and their commercial counterparts do not, standing alone, satisfy the "uniqueness" step of the substantial relationship test. We also must look to "the manner in which the tax-exempt organization operates its business." *U.S. v. American College of Physicians,* 475 U.S.

834, 849, 106 S.Ct. 1591, 1599, 89 L.Ed.2d 841 (1986). Substantial evidence supports the district court's finding that TAA used the lease forms and *Redbook* extensively in its educational and legislative programs. Neimann testified that TAA essentially uses the *Redbook* and lease forms as the course materials for its seminars on developments in Texas landlord/tenant law. Further, Neimann distributes the materials to key state legislators and frequently highlights those materials in the column he writes for TAA's monthly newsletter.

TAA's use of the *Redbook* and lease forms thus parallels the hypothetical "looseleaf library service" this court described in *Louisiana Credit Union League*, 693 F.2d at 535. We observed that such a service—compiling statutes, regulations and other legal materials for a subscription fee—would satisfy the uniqueness step. We added, "Any business league activity so distinctively oriented towards its members seemingly would bear a substantial relationship to its purpose." *Id.*

Under the substantial relationship test's second step, TAA's activities must benefit its members as members, rather than in their individual capacities. *Id.* at 535–36. In other words, "When the activities of a business league are directed toward the achievement of the common business interests of its members, the benefits that accrue to its members are inherently group benefits." *Id.* at 536.

The evidence supports the district court's determination that the educational benefits from TAA's dissemination of its updated materials improved management practices in Texas. TAA presented testimony from Charles Webb, an attorney and former justice of the peace—the court of basic jurisdiction for landlord-tenant disputes in Texas. Webb stated that during his eight-year tenure as a justice of the peace the use of TAA lease forms had (1) helped to standardize rights and duties under Texas landlord-tenant law; (2) contributed to better presentations of disputes before him; and (3) raised the level of sophistication of the questions he fielded from owners and managers at seminars he conducted.

The government contends that TAA members benefit individually from the association's materials, rather than as members, because TAA charges fees for its materials in direct proportion to the immediate, tangible benefits received. We have noted, " 'When each member contributes in proportion to what he receives, it is a strong indication that the benefits received are not ... "inherently group benefits." ' " *Louisiana Credit Union League*, 693 F.2d at 538 (quoting *Evanston–North Shore Board of Realtors v. United States*, 320 F.2d 375, 379, 162 Ct.Cl. 682 (1963)).

However, the government conceded at oral argument that TAA's activities and materials do provide benefits to the entire industry. Further, the government's contention ignores the uncontradicted testimony of Webb and TAA's general counsel, Larry Neimann; both testified that TAA's use of its updated materials in its legislative and educational programs had improved the standards of landlords in Texas. Niemann also stated that TAA's materials and efforts had helped to create in Texas a less harsh regulatory environment for landlords than that existing in states such as New York and California. This testimony supports the court's conclusion that TAA members get more for their money than a pack of forms or a single book.

The government also argues that the association's materials benefit their users solely in an individual capacity because only TAA members can buy and use them. See *Carolinas Farm & Power Equip. Dealers v. United States*, 699 F.2d 167, 171–72 (4th Cir.1983); *Louisiana Credit Union League*, 693 F.2d at 538. This argument mistakenly assumes that the restricted sales under these facts block all benefits to non-members. As the government itself conceded, TAA's materials, legislative efforts and educational programs—which non-members do attend—have contributed to industry-wide improvements in landlord practices and legislation.

Essentially, the government is reduced to arguing that TAA must pay taxes on its

income from lease forms and *Redbooks* solely because the association sold them for a profit instead of giving them away. However, this analysis strips away the purpose of § 511(a)(1) and the substantial relationship test; their existence demonstrates that tax-exempt business leagues do not automatically incur taxes for all profit-making activity. The district court below properly focused on the distinctive nature of TAA's materials and the association's use of them to conclude that they are substantially related to TAA's purpose. The judgment is

AFFIRMED.